BARRY, Judge.
Defendant appeals a judgment requiring it to pay insurance commissions after the plaintiff agents left employment. The only issue is whether there was an agreement between the parties to pay commissions after termination of employment.[1]
The four plaintiffs were employed as non-group sales agents for the defendant insurance company. Their compensation included enrollment fees on specified policies, the first month’s premium on certain riders or endorsements, and a 5% commission on premiums for as long as the policy remained on the company’s books for a maximum of 24 months. The latter, known as “renewal commissions”, formed a substantial portion of the agents’ pay and was used as an inducement by the company in hiring agents. The commissions were paid every six months after a minimum of fifty poli *333 cies were sold during that “bonus” period. Effective January 1,1979, the bonus period was changed to four months and the minimum policy sales reduced to thirty.
Two of the four plaintiffs, Kahn and Nunes, voluntarily ended their employment in February, 1979 and filed suit alleging breach of contract when their renewal commissions were not paid. The other two plaintiffs, Dowty and Knoll, were fired in June, 1979 after they refused to sign an inter-staff memo issued to “All Nongroup Agents” which contained the following clause:
“7. In the event a Nongroup agent terminates his association with Blue Cross of Louisiana or is terminated from Blue Cross of Louisiana prior to the 4-month cut-off date, he will not be eligible to receive the renewal commissions for that 4-month period or any future renewal commissions.”
In Written Reasons the court stated that prior to the memo there was no specified agreement for payment of commissions after employment. The Trial Judge held that the defendant’s memo attempted to “change” the procedure for renewal commissions, i.e. the reverse of the new procedure was in effect prior to the change (i.e. payments would have been due even if the employee was terminated). The court concluded plaintiffs earned a commission upon sale of a policy and that after their employment ended, prior to the memo or because of their refusal to sign it, their commissions should be paid during the two year period.
Defendant argues two criteria must be met in order to earn a commission and asserts neither was: (1) employment on the day the commission is payable; (2) sale of the requisite number of policies during the bonus period. Defendant maintains the trial court erred because plaintiffs failed to prove the contract terms which were allegedly breached and the trial court’s reliance on LSA-C.C. Art. 1965 was error because it should be read in conjunction with Art. 1964 [2].
Defendant contends plaintiffs did not meet the Art. 1964 requirement because no evidence was produced showing they “supposed” equity would supply their contract on this point. To the contrary, defendant asserts, the evidence revealed that Blue Cross had a policy that compensation ended upon termination of employment and it never intended equity would create a contract with plaintiffs. Defendant urges Art. 1965 is inapplicable since there is no missing element in plaintiffs’ contract with Blue Cross and it is not necessary to include in an employment contract a provision that compensation stops when employment ends.
Plaintiffs state the evidence shows when they were hired they were told commissions would be paid up to 24 months and payment was not qualified or limited. They assert terms of their employment were clear and unambiguous and never qualified until the memo. Plaintiffs urge that if their oral contract was ambiguous it should be construed in their favor and against the party “from whom the words proceed.” Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966); Housing Authority v. Fidelity & Deposit Co. of Md., Inc., 309 So.2d 920 (La.App. 3d Cir. 1975). They argue the law is also settled that this rule applies where the obligor has failed to explain the limit of his obligation. Wurzlow v. Placid Oil Company, 279 So.2d 749 (La.App. 1st Cir.) writ refused 282 So.2d 140 (La.1973); LSA-C.C. Art. 1956, 1957, 1958.
Plaintiffs point to the testimony of defendant’s manager, Mr. Smith, who hired three of the four plaintiffs, who testified it was his understanding that plaintiffs would receive commissions for two years. Mr. Smith stated commissions were not to cease upon termination of employment and no one (until the memo) told either of the plaintiffs they would be ineligible for commissions if they left the company. Plaintiffs contend in the absence of an express agreement and until the memo, defendant clearly implied its promise to pay the commissions.
*334 Whether defendant’s memo altered its employment obligation is a question of fact and the Trial Judge’s determination should not be disturbed absent manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). Defendant’s argument that all agents had to sign the memo because new agents were being hired (and it was necessary for them to understand the policy) is without merit. If this were true only new agents would have been required to sign and those with the company for three years (Knoll and Dowty) would not have been fired for refusing to sign.
We agree with the trial court’s conclusion that the defendant’s memo styled “Change of Procedure” did, in fact, make a change, and the reverse procedure was in effect prior to the memo. We find there was an implied agreement[3] between the parties whereby commissions were earned and payable after the minimum number of policies were sold during the specified period and employment thereafter was not a prerequisite for payment of the commissions.
The judgment of the District Court is affirmed with defendant to pay all costs of appeal.
AFFIRMED.

. The plaintiffs also sought recovery of overpaid social security taxes because they were characterized as self-employed. The lower court dismissed this claim because the taxes were paid voluntarily and a refund could be sought. No appeal was taken.

. LSA-C.C. Art. 1964. “Incidents supplied by law, equity or usage. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.”

. LSA-C.C. Art. 1761. “Contract, definition. A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement.