PRESTON H. HUFFT, Judge Pro Tern.
The plaintiffs, Urban Leonard, Joseph Descant and Douglas Ordes, sued the defendant, Louisiana Health Service and Indemnity Co. (sometimes referred to as “Blue Cross”), for recovery of certain renewal commissions which Blue Cross failed to pay after the plaintiffs terminated their association with the company. The trial court dismissed plaintiffs’ suit due to the finding that “the plaintiffs failed to sustain the burden of proving that the renewal commissions were due to them after the termination of their association with Blue Cross.” The plaintiffs have appealed from the decision.
The issue before us is whether the record supports the existence of any agreement whereby plaintiffs might enforce their claims. For the reasons given below, we modify in part and reverse in part the trial court’s decision, and remand for purposes of determining the amounts of recovery to which plaintiffs are entitled in accordance with this opinion.
Blue Cross, through a nongroup sales manager named Melvin Hoerner, engaged the exclusive services of Urban Leonard in February, 1974, and of Joseph Descant in March, 1976, to sell Blue Cross insurance policies. Thomas J. Smith, another non-group sales manager for Blue Cross, engaged for the company the exclusive services of Douglas Ordes in October, 1976, for the same purpose. The compensation *174 payable for such services consisted of: (i) a nominal amount of cash sometimes referred to as the “enrollment fee”; (ii) a commission of 5% of the policy premium; and (iii) a renewal commission of 5% of the renewal premium(s) paid during the initial two years of a policy’s existence. The renewal commission represented a significant portion of the compensation that the plaintiffs might earn. Payment of the renewal commission, naturally, required that the policy be in effect and renewed during the two year deferral period. Payment of the sales commission in this manner approximated the amount normally paid by an insurance company as a single commission upon issuance of a policy. The payment plan deferred payment of the normal commission and made collection of the whole amount contingent upon renewal. The record indicates that Blue Cross did not allow the plaintiffs’ sales efforts to include making sure that an issued policy would be renewed; Blue Cross apparently directed all of plaintiffs’ efforts to making new sales of policies. For 1980 and thereafter, Blue Cross has paid the entirety of the sales commission upon issuance of the policy rather than over a two year deferral period.
Blue Cross has characterized its relationship with the plaintiffs as one with independent contractors which position plaintiffs have not controverted. Blue Cross defended the instant suit by insisting that company policy during the affected period always conditioned payment of the renewal commissions to an independent contractor upon his fulfilling two other requirements: (1) that he meet or exceed a certain sales quota of new business within a specified period of time, and (2) that he remain associated with Blue Cross throughout the entirety of such quota period. In July, 1979, officers of Blue Cross circulated a certain memorandum captioned “Change in Policy,” effective as of January 1, 1979 (sometimes referred to below as the “Subject Memorandum”), which Blue Cross required its independent contractors to execute; failure to execute resulted in termination of association with Blue Cross. Leonard’s association with Blue Cross terminated in June, 1979, before circulation of the Subject Memorandum which, naturally, he did not sign. Descant and Ordes did sign the Subject Memorandum but they terminated their respective associations with Blue Cross within several months thereafter: Descant in October, 1979, and Ordes in February, 1980.
Thomas J. Smith testified that, when Ordes had been engaged, Smith was unaware of any company policy which conditioned payment of the renewal commissions upon the sales representative either meeting or exceeding a certain quota of new sales or maintaining an association with Blue Cross throughout the entirety of the quota period. Smith further testified that he did not engage Ordes for Blue Cross subject to such requirements placed upon payment of the renewal commissions.
Melvin Hoerner testified that he was aware of such requirements when he engaged Leonard and Descant for Blue Cross but he could not state whether he informed them of such requirements when he engaged their services. The record reflects that the circulation of the Subject Memorandum had been the first written communication by the company or acknowledgment of understanding by certain of the plaintiffs that payment of renewal commissions would be subject to the quota and continuing relationship requirements.
Our review of the trial court’s decision in conjunction with the record leads us to conclude necessarily that the decision rendered rests upon a failure to determine the relationship between Blue Cross and plaintiffs while implicitly accepting what appears to be contradictory positions taken by Blue Cross: the plaintiffs were independent contractors compensable as employees. The trial court’s decision does not consider the nature of the “association” Blue Cross had with the plaintiffs, which characterization is critical in determining the proper disposition of this case. We find that plaintiffs were independent contractors of Blue Cross.
We must next determine whether the compensation described by Blue Cross, par- *175 tieularly with respect to the requirements placed upon the renewal commissions, is consistent with plaintiffs’ status as independent contractors. The Blue Cross explanation of compensation is that the independent contractor not only agreed to defer payment of a significant portion of a normal sales commission over a two year period but also agreed that such amount would be payable in the form of an employee’s bonus conditioned upon meeting or exceeding a sales quota in each respective quota period falling within the two year deferral period and maintaining association with Blue Cross throughout the entirety of.a quota period. The bonus payment plan is at odds with the independent contractor status of the plaintiffs asserted by Blue Cross. In essence, Blue Cross has attempted to exact damages from an independent contractor (who fails to make a quota in sales subsequent to those to which the renewal commissions relate or who terminates association with Blue Cross) by forfeiture of what would otherwise be a normally earned and received commission.
The case at bar has not presented this Court with the first opportunity to consider and to dispose of similar claims. Indeed, in Dowty, et al. v. Blue Cross of La. d/b/a Louisiana Health Service & Indemnity Co., 410 So.2d 332 (La.App. 4th Cir., 1982), writ denied, 412 So.2d 1113 (La., 1982), other plaintiffs, having independent contractor status but casually referred to as employees in the opinion, had brought suit for recovery of renewal commissions from the same defendant under similar but not the same set of facts. In said case, we reviewed the trial court’s finding of facts:
“(1) [P]rior to the memo [Subject Memorandum] there was no specified agreement for payment of commissions after employment.
“(2) [Defendant’s memo attempted ‘to change’ the procedure for renewal commissions, i.e. the reverse of the new procedure was in effect prior to the change (i.e. payments would have been due even if the employee was terminated).
“(3) [P]laintiffs earned a commission upon sale of a policy and that after employment ended, prior to the memo or because of their refusal to sign it, their commissions should be paid during the two year period.”
Dowty, supra, at 333.
After characterizing the plaintiffs’ “association” as being one of independent contractors and concluding that the record does not support the contradictory positions of Blue Cross concerning renewal commissions, we hold that the trial court’s decision in this case must be modified in order to reflect these matters. The modification we deem appropriate is analogous to the first enumerated finding of fact by the trial court in Dowty, supra: the record does not reflect whether a specified agreement existed with respect to the payment of renewal commissions to plaintiffs after they terminated their association with Blue Cross.
Our modification of the trial court’s ruling, however, does not dispose of the issue. Because no specific agreement concerning the payment of renewal commissions existed, we must inquire as to whether an implied agreement existed. This Court, in upholding the trial court’s decision in Dowty, supra, ruled as follows:
“[T]he defendant’s memo styled ‘Change of Procedure’ [the Subject Memorandum] did, in fact, make a change, and the reverse procedure was in effect prior to the memo. We find there was an implied agreement[*] between the parties whereby commissions were earned and payable ... and employment thereafter was not a prerequisite for payment of the commissions.”
* * * * * *
“[*]LSA-C.C. [1870] Art. 1761.
‘Contract definition. A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement.’ ”
******
Dowty, supra, at 334.
The plaintiffs’ position as to their implied agreement with Blue Cross appears consistent: plaintiffs expected payment of a *176 normal and earned commission over a two year deferral period rather than all at once when the policy was issued. Of course, they realized that the policy had to remain in effect from issuance and be renewed at the appropriate times in order for them to receive the full commission, although they had no obligation with respect to inducing the renewal of the policy after issuance. As the analysis above indicates, the defendant’s position as to what is implied in the agreement is rife with inconsistency: the major portion of the independent contractor’s commission is converted to an employee’s bonus dependent upon performance of acts subsequent and unrelated to services performed in issuing the policy to which the renewal commissions relate; failure to perform such acts results in forfeiture of a significant portion of an already earned commission.
The defendant’s assertion that the Subject Memorandum did not constitute a change in policy does not impress us. In Dowty, supra, at 334, we observed that the “[defendant's agreement that all agents had to sign the memo [Subject Memorandum] because new agents were being hired (and it was necessary for them to understand the policy) is without merit. If this were true only new agents would have been required to sign and those with the company for three years ... would not have been fired for refusing to sign.” The record of the instant case reinforces our previous ruling because no specific information concerning the alleged new agents could be elicited from the defense witnesses. The allegation of new agents appears self-serving and unsupported in the record. Finally, Blue Cross’ abandonment of the bonus payment plan in the Subject Memorandum in 1980 and thereafter, in favor of paying the full commission at once, speaks for itself.
After considering these matters, we find and hold that the Subject Memorandum did effect a change in policy whereby the signatory independent contractors had to meet a quota of new sales during a quota period and to have a continuing association with Blue Cross throughout the entirety of the quota period. Because we find in the instant case that the Subject Memorandum put into effect a specific agreement concerning requirements for paying the renewal commissions in the form of a bonus, which constituted a change in policy, we hold that there was an implied agreement between Blue Cross and the plaintiffs, absent the effect of the Subject Memorandum, that renewal commissions would be payable to an independent contractor with respect to policies for which commissions had been initially earned and that continuing “association” with Blue Cross was not a prerequisite for payment of the renewal commissions.
The renewal commissions payable to Leonard shall be determined solely in accordance with the foregoing; those payable to Descant and Ordes, signatories of the Subject Memorandum, shall be determined according to the above for all policies they caused to be issued prior to January 1, 1979, the effective date of the Subject Memorandum. Of course, the provisions of the Subject Memorandum shall govern their rights to renewal commissions with respect to policies they caused to be issued in the period extending until the earlier of termination of association with Blue Cross or termination of the Subject Memorandum. In elaboration of this point, the Subject Memorandum shall not be construed so as to have any effect in precluding Descant and Ordes from recovering renewal commissions payable with respect to policies they caused to be issued prior to January 1, 1979.
For the foregoing reasons, the trial court’s decision is modified in part, reversed in part and remanded for determination of the renewal commissions payable to the plaintiffs according to the holding in this opinion. Costs are to be assessed to and paid by defendant.
MODIFIED IN PART; REVERSED IN PART AND REMANDED.