230 N.J. Super. 72 (1989)
552 A.2d 654
I. MEYER COHEN, INDIVIDUALLY AND T/A I. MIKE COEN AGENCY, PLAINTIFF-APPELLANT,
v.
HOME INSURANCE COMPANY, A FOREIGN INSURANCE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, PURSUANT TO THE LAWS OF NEW JERSEY, DEFENDANT-RESPONDENT, AND THE STATE OF NEW JERSEY, DEPARTMENT OF INSURANCE, KENNETH D. MERIN, COMMISSIONER, AND JOINT UNDERWRITING ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 22, 1988.
Decided January 19, 1989.
*74 Before Judges PRESSLER, O'BRIEN and STERN.
Mark R. Silber, attorney for appellant.
Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys (Elliott Abrutyn, of counsel; Robert John Aste, on the brief) for defendant-respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Public, executive and legislative attention engaged by the escalating automobile insurance crisis in this state over the past decade, see, e.g., Governor's Reconsideration and Recommendation Statement responding to L. 1988, c. 119, has typically been focused on the problems faced by automobile owners seeking to obtain adequate insurance coverage at reasonable premium rates in a viable voluntary market. This appeal implicates another significant aspect of automobile insurance industry dynamics, namely, the relationship between the insurance companies, who are required by law indefinitely to renew the policies of qualified drivers, N.J.S.A. 39:6A-3, and the licensed insurance brokers of this state who, as appointed agents of insurance companies, sell automobile insurance policies to consumers and who service the automobile insurance needs of those consumers, their clients. More specifically, this controversy involves the right of such an agent to payment of commissions by the company after the company has terminated their agency relationship when, because of statutory, economic and contractual compulsions, the company continues to renew the consumer's policy and the terminated agent continues to service it.
Plaintiff I. Meyer Cohen, trading as I. Mike Coen Agency (Cohen), is such a licensed insurance broker selling and servicing casualty and automobile liability policies as agent for various insurance companies licensed to do business in New Jersey, including defendant Home Insurance Company. Home terminated *75 their agency agreement in 1985, but Cohen, for reasons and under circumstances explained herein, continued to service Home's automobile liability policyholders in respect of renewals, endorsements, claims, premium problems, and the like. Home stopped paying Cohen any commissions on renewals or other remuneration for his services in April 1987, although he continued thereafter to perform those services. Cohen therefore instituted this action seeking such payment from Home on a quasi-contract theory.[1] The matter proceeded to trial, and following the close of plaintiff's case, the trial judge granted defendant's motion for involuntary dismissal pursuant to R. 4:37-2. Plaintiff appeals, and we reverse.
The factual and legal issues before us are best explained in light of relevant legislative and judicial history. By L. 1970, c. 217, codified as N.J.S.A. 17:22-6.14a, the Legislature first undertook to regulate the termination of agency agreements between insurance companies and their independent agents, that is, agents paid on a commission rather than a salary basis who represent more than one company and who hold a New Jersey broker's license. As originally enacted, the statute, applicable to all types of insurance, provided that except if the termination were for cause as therein defined, 90 days notice thereof was required to be given by the company to the agent. Although the agent, from the date of notice of termination, could no longer write new business or increase coverage without the company's approval, the company was nevertheless obliged to accept such of the agent's renewal business as complied with its underwriting standards both during that 90-day period and for an additional six-month period thereafter. The original version of the statute did not, however, refer to the terminated agent's right to commissions on this renewal business. By amendment the following year, effected by L. 1971, c. *76 152, the statute was modified to increase the six-month period to nine months and to provide for payment to the terminated agent of a commission on all renewal business in accordance with the terminated agency contract.
In 1979, by L. 1979, c. 75, § 1, N.J.S.A. 17:22-6.14a was again amended in respect of automobile liability policies renewed by the company pursuant to N.J.S.A. 39:6A-3, that provision of the New Jersey Automobile Reparation Reform Act (No Fault Law), N.J.S.A. 39:6A-1, et seq., which has provided, since 1972, that no insurance carrier shall refuse to renew the coverage required by the No Fault Act without the consent of the Commissioner of Insurance.[2] As to such policies, the 1979 amendment required the company to accept the terminated agent's renewal business for a period of three years following the effective date of the termination, and there is no question that the terminated agent's statutory right to commissions on those renewals continued for the full three-year period. Section 2 of L. 1979, c. 75, provided, however, that the Act would expire three years after its date of enactment, namely, on April 10, 1982. By L. 1981, c. 137, effective July 1982, the Legislature extended that three-year period for another three years, section 2, providing that
Notwithstanding the provisions of this act with respect to the period during which a commission is to be paid following the termination of a contract [of agency], commissions shall be paid for a period of 3 years on all business renewed pursuant to * * * [N.J.S.A. 39:6A-3] * * * before April 10, 1982.
Although the Legislature has not acted on the commission question since then, it did, by L. 1986, c. 211, § 11, again amend N.J.S.A. 17:22-6.14a in two respects. First, as a structural matter, the original unnumbered paragraphs of that statute were given letter designations and the agency termination provisions in issue here were then allocated to subparagraph (d). Second, as a substantive matter, new provisions, denominated *77 subsections (j) and (k), were added to conform N.J.S.A. 17:22-6.14a to the provisions of the New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1, et seq., first effective in 1984 and extensively amended in 1985 and 1986, creating what is commonly known as the Joint Underwriting Association (JUA).
Thus insofar as N.J.S.A. 17:22-6.14a(d) is concerned, its controlling provision in respect of terminated agents since April 10, 1985 is only the requirement that for a period of 90 days following notice of termination "the company shall not refuse to renew such business from the agent" as would accord with the company's underwriting standards and that for a period of nine months after termination the company shall, provided the former agent has not been replaced as the broker of record by the insured and upon request in writing of the terminated agent, renew all contracts of insurance for such agent, paying to him their last agreed-upon commission for renewals. There is no discrete provision made therein for automobile liability insurance.
It is thus immediately apparent that while N.J.S.A. 17:22-6.14a(d) speaks in terms of renewals for a total period of only one year following the date of notice of termination, N.J.S.A. 39:6A-3 requires the company to renew indefinitely provided only that the insured continues to meet underwriting standards and no cause of non-renewal pursuant to N.J.A.C. 11:3-8.1, et seq., occurs. See Sheeran v. Nationwide Mutual Insurance Company, Inc., 80 N.J. 548 (1979). Of course, as Sheeran makes clear, N.J.S.A. 39:6A-3 applies only to automobile liability policies whereas N.J.S.A. 17:22-6.14a(d) deals with all types of insurance coverage. Id. at 557-558. The question then, as we view it, is whether, in respect of automobile insurance policies renewed pursuant to N.J.S.A. 39:6A-3, the time limitations of N.J.S.A. 17:22-6.14a(d) insulate insurance companies from paying their terminated agents compensation for services which, as a matter of legal, contractual and economic compulsions, *78 the companies are virtually required to accept and the terminated agents are virtually required to perform.
The trial judge dismissed the action after the close of plaintiff's case apparently based on his perception that N.J.S.A. 17:22-6.14a(d) does afford such insulation despite the terminated agent's performance of services and the company's acceptance of the benefit thereof. We disagree. In our view, the real question in this case is whether there are indeed such compulsions which leave both the company and the terminated agent with no viable alternative to continuing their agency relationship in respect of automobile insurance renewals. If such compulsions do exist, then clearly quasi-contract principles apply, and we see nothing in the statute impinging upon the judicial obligation of providing a classic common-law remedy in order to adjust the rights of private parties. We are also satisfied from the evidence offered here on plaintiff's case that sufficient proof of his right to a quasi-contract remedy was adduced to preclude the involuntary dismissal entered here.
Plaintiff was the sole witness on his case. It was his testimony that he had been originally appointed as a Home agent in 1970, terminated in 1980, reappointed in 1983, and terminated again in 1985 by notice dated June 20th, effective September 20th. He has approximately 300 clients who hold Home automobile policies. During the first period of his termination, he continued to renew those policies and service the policyholders receiving his usual commission pursuant to the version of the statute then in effect. After the second termination, he continued to receive commissions only until April 1, 1987.[3]
Despite the fact that Home has refused to pay him a commission since April 1987, plaintiff has continued to renew the Home policyholders insurance and to service those clients. Servicing *79 his clients includes, he testified, responding to Home's inquiries to him for information respecting them, explaining to them and advising them about coverage options and premiums, obtaining necessary endorsements when coverage requirements or personal situational changes require, assisting them with claim forms, and generally providing those services which the policyholding public expects and has a right to demand from its insurance brokers, accepting as well all of the concomitant risks, obligations, and potential liability of the relationship. See, e.g., Rider v. Lynch, 42 N.J. 465, 476-477 (1964); Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394 (App.Div. 1988); Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 341 (App.Div. 1984).
As to his reasons for continuing to renew the insurance of his Home policyholder clients and for continuing to service them despite Home's refusal to compensate him, plaintiff first explained that his 1983 agency contract with Home, as is typical in the industry, accorded him what are known and denominated as expiration rights. These rights, in effect, recognize the agent's present and prospective property interest in his relationship with his client by acknowledging the agent's exclusive right to his client's records and prohibiting the company from using its records of policy expirations "to sell, service or renew any form of insurance coverage or other product which abridges the Agent's rights of ownership, use and control thereof" or from referring such "information to any other agent or broker."
Plaintiff further explained that both in order to protect his business interest in the client relationship and to fulfill his fiduciary obligation to his client, he is required to renew the client's Home automobile policy since Home, obliged by statute to issue the renewal, is in fact the only present source of continued automobile insurance for its own policyholders. This is so, he explained, because no other company for which he is an agent or with which he communicated would undertake to write new voluntary-market business. Nor, he testified, could *80 he justify placing these clients' business with JUA. The only way, therefore, that he could keep these clients insured other than by himself servicing the renewals would be by turning the business over to Home for its own direct handling. He further testified, however, that as a matter of his personal knowledge and experience, Home, unlike those companies which operate on an in-house sales and service basis, does not have an established system for direct policyholder contact and accommodation, does not maintain a network of offices in New Jersey, does not have New Jersey telephone listings, and in fact can be dealt with by the New Jersey consuming public only by way of a single greater New York office. Not only would such action on his part therefore prejudice his clients, but it would also require him to forego the expiration rights vouchsafed to him by his agency contract. We further note that if plaintiff were to turn his Home clients directly over to Home and thereby waive his expiration rights, Home might well choose to service them by assigning them to other of its appointed agents, again accomplishing a result otherwise precluded by the agency agreement.
We find a simple solution to plaintiff's dilemma in the agency agreement itself. Paragraph (3) of Article II, captioned Ownership of Expirations, was not brought either to our attention or that of the trial judge by plaintiff, although it appears to us that it might be dispositive. That paragraph provides in full as follows:
Nothing in this section shall interfere with the Company's obligation to renew policies containing contractual renewal guarantees or which must be renewed by virtue of statutory or regulatory authority, and the Agent shall be entitled to receive commissions on such policies at the lesser of the prevailing rate of commission then being paid by the Company for similar policies, or the rate of commission paid on such policy for the immediately preceding term, unless the Company is furnished with a written designation of another agent or broker signed by the insured.
We see no reason why this clearly stated provision does not control. It states in simple and unambiguous terms that as long as the agent remains the insured's broker and as long as the company is statutorily obligated to renew the policy, the *81 agent is to receive commissions as therein provided. Both these conditions are met here.
We recognize that Article VIII of the agency agreement provides for "Modification of Agreement Upon Termination" and that paragraph (2) thereof repeats the statutory language of N.J.S.A. 17:22-6.14a(d) in respect of the one-year-after-termination renewal obligations therein set forth. But in our view, Article II(3) and Article VIII(2) are easily reconciled if Article VIII(2) is regarded as applying generally to all classes and types of casualty and liability insurance Home writes and Article II(3) is deemed to constitute an exception to the general scheme in the case of statutorily compelled renewals. Moreover, we note that it is only Article II(3) which expressly refers to commissions. We also point out that Article II(3) is clearly construable as applying to a terminated agent since its provisions would have no point at all if the agency agreement were still in force. Obviously, as long as the agency agreement continues, no special commission provision is necessary. We also think it evident that an express agreement between the parties to continue commission payments to a terminated agent for statutorily mandated renewals would be unaffected by the silence of N.J.S.A. 17:22-6.14a(d). Certainly, whatever else the statute may do, it is, in our view, not even arguable that it could have intended to prohibit an express agreement between insurer and agent to continue to pay commissions on renewals after termination.
We recognize that the parties themselves have not relied on Article II(3) and should be afforded the opportunity of presenting their positions with respect thereto before an adjudication based thereon. Rather than requesting the parties to address that issue on this appeal, we remand to the trial court for that purpose for two reasons. First, there may be facts involved in that issue requiring presentation and determination. Second, we are satisfied that if plaintiff, for reasons which do not appear in this record, should be proved to have no commission *82 right on an express contract basis, he has nevertheless made out a sufficient prima facie case of quasi-contract to require reversal of the involuntary dismissal and a remand for trial of that issue.
The applicable quasi-contract principles are simple and well-settled, and the prescriptions expressed by the Restatement, Restitution (1937), are firmly embedded in our jurisprudence. As cogently summarized by Judge Collester in Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108-109 (App.Div. 1966), quasi-contracts "are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice." As he went on to explain,
In cases based on quasi-contract liability, the intention of the parties is entirely disregarded, while in cases of express contracts and contracts implied in fact the intention is of the essence of the transaction. In the case of actual contracts the agreement defines the duty, while in the case of quasi-contracts the duty defines the contract. Where a case shows that it is the duty of the defendant to pay, the law imparts to him a promise to fulfill that obligation. The duty which thus forms the foundation of a quasi-contractual obligation is frequently based on the doctrine of unjust enrichment. It rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle of whatsoever it is certain a man ought to do, that the law supposes him to have promised to do. [Ibid.]
It is consequently only necessary for plaintiff to prove that defendant received a benefit from plaintiff which it is unjust for him to retain without compensation, and that plaintiff, in conferring the benefit, expected remuneration. Id. at 109. And see St. Paul Fire, etc., Co. v. Indemnity Ins. Co. of No. America, 32 N.J. 17, 22 (1960) (also emphasizing that a quasi-contractual obligation is "sometimes imposed even against a clear expression of dissent"); West Caldwell v. Caldwell, 26 N.J. 9, 29 (1958) (explaining that a quasi-contract is the "formula by which enforcement is had of a public duty raised to prevent unjust enrichment or unconscionable benefit or advantage..."). See also Restatement, supra, § 1, 2, 112.
We are satisfied that plaintiff established a prima facie showing, based on his own testimony, that he has conferred and *83 is continuing to confer a benefit upon Home which it would be unjust for it to retain without compensating him. We also reject Home's contention that beyond any genuine dispute, plaintiff conferred that benefit without expectation of payment, thereby disqualifying himself from a quasi-contractual remedy. Plaintiff's proofs are obviously susceptible to the finding that he never intended to confer a gratuitous benefit upon defendant and that the benefit was conferred by him not as an officious volunteer but because he had no choice. Of singular applicability in this regard is section 112 of the Restatement, supra, which provides that
A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.
As we have already pointed out, plaintiff has made a prima facie showing that the benefit he conferred on defendant was necessitated for the protection of third persons, namely, his clients, defendant's policyholders. Not only did plaintiff himself testify that renewal of their Home policy was their only recourse but there is also substantial support for that proposition in the relevant legislative events.
In this context, we note defendant's suggestion that plaintiff was always free to place his clients' automobile insurance with JUA, which is obliged to accept all risks, or with any other insurance company writing new voluntary risks. As to JUA coverage, we point out that aside from the question of whether plaintiff would be violating his fiduciary obligation to his Home policyholding clients by placing their insurance with JUA, he was in any event not at liberty to do so. Qualification for JUA insurance is defined in terms of the prospective insured's inability otherwise to obtain insurance. See N.J.S.A. 17:30E-2; New Jersey Automobile Full Insurance Underwriting Association Plan of Operation, Part I, Section I(M) (1984 as amended). Obviously, then, a Home policyholder eligible for renewal under *84 N.J.S.A. 39:6A-3 and N.J.A.C. 11:3-8.1, et seq., is not qualified for JUA coverage. Moreover, plaintiff's testimony respecting his inability to place this business with any other company on a voluntary basis is also supported by the executive and legislative perception that achievement of insurance reform and ultimate stability and equity in automobile insurance availability is dependent upon encouragement of growth of the voluntary market and concomitant contraction of the JUA role. See, e.g., Governor's Statement, supra; N.J.S.A. 17:30E-14. Surely the factual premise of these perceptions can only be a recognition of the increasing unavailability of non-JUA "new" insurance caused by the present reluctance of the companies to write new voluntary business. Finally, we are satisfied that plaintiff also demonstrated, on a prima facie basis, that his interest in protecting his clients justified his decision to continue to service them rather than turning them over to defendant who, he testified, lacks the facilities required to render the scope of services and diligent personal attention to individual needs which he provides.
We also conclude, in terms of section 112 of the Restatement, that plaintiff's continued service to Home could be found to have been "conferred under circumstances making such action necessary for the protection" of Home's interests. That is to say, Home is required to issue renewals to its eligible policyholders. It is materially assisted in meeting this obligation by plaintiff's continued relationship with its policyholders. Plaintiff, on the other hand, has no choice but to render that assistance since his only alternatives would be the abandonment of his clients as well as the waiver of the expiration rights he bargained for in the agency agreement and which are the predicate of his staying in business.
Defendant obviously has a right to present its defense. But if the facts as claimed by plaintiff are found to be so, we would be constrained to conclude that unless and until he can place his *85 clients' automobile insurance business elsewhere, plaintiff must, in their interest, renew it with Home; that he thereby confers a benefit upon Home; and that as a matter of fairness and justice, he should not be compelled to do so without compensation. He will, in short, have proved his case in quasi-contract. We repeat that should he do so, N.J.S.A. 17:22-6.14a(d) in its present form would not, in our view, bar his right to a quasi-contractual remedy. The statute equates the company's renewal with the agent's right to commission and always has. Indeed, in its present form it only requires that during a period of nine months from the effective date of termination, the company must renew all policies for the terminated agent and pay him commissions thereon. It does not purport to address the company's obligation to renew automobile policies indefinitely. Since the company's obligation to issue such renewals is not therein prescribed, it can be of no dispositive significance that the agent's right to commissions on such renewals is also not therein prescribed. In sum, that statute simply does not now address or encompass the indefinite renewal strictures imposed by N.J.S.A. 39:6A-3 and is therefore not dispositive of the terminated agent's right to commissions on such renewals.[4] His right thereto is therefore clearly subject to adjudication on common-law contract and quasi-contract grounds.
Reversed and remanded for further proceedings consistent herewith. Should the trial judge conclude that plaintiff has an express contractual right to commissions under Article II(3) of the agency agreement, judgment may be entered for plaintiff without trial of the quasi-contract cause.
NOTES
[1] Although other parties had been initially joined and other causes of action alleged by the time of trial, Home was the sole remaining defendant and quantum meruit the sole remaining cause.
[2] Pursuant to that statute, the Commissioner of Insurance promulgated N.J.A.C. 11:3-8.1, et seq., specifying the grounds an automobile liability carrier could rely on for non-renewal.
[3] According to the position Home takes, it could have stopped paying commissions on June 20, 1986, nine months after the effective date of the termination.
[4] We have been made aware by defendant of various bills introduced at various times proposing to amend N.J.S.A. 17:22-6.14a(d) to address these issues. These bills were not, however, enacted, and we do not regard ourselves as in any way bound thereby, either as a matter of substance or by way of seeking to determine legislative intent.