248 N.J. Super. 255 (1990)
590 A.2d 1189
IN THE MATTER OF THE TERMINATED AETNA AGENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1990.
Decided December 3, 1990.
*256 Before Judges DREIER, ASHBEY and LANDAU.
Dean A. Gaver argued the cause for appellants the Aetna Casualty and Surety Company and the Standard Fire Insurance Company (Hannoch Weisman, attorneys; Michael J. Herbert, of counsel; Michael J. Herbert and Susan Stryker on the brief).
Betty S. Adler argued the cause for respondents Members of the Special Committee of Terminated Aetna Agents (Archer & Greiner, attorneys; Charles W. Heuisler, of counsel; Betty S. Adler on the brief).
Douglas S. Eakeley, Acting Attorney General, attorney for respondent State of New Jersey, Commissioner of Insurance, submitted a statement in lieu of brief (Donald Parisi, Deputy Attorney General, on the statement).
Wilentz, Goldman & Spitzer, attorneys, submitted a brief on behalf of amicus curiae Professional Insurance Agents of New Jersey (Marvin J. Brauth, of counsel; David M. Gilfillan on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
*257 Aetna Casualty & Surety Company and the Standard Fire Insurance Company (Aetna) appeal from an Order of the State Commissioner of Insurance directing it to pay full commissions from and after July 20, 1989 to forty-seven terminated agents (Agents) who continue to service renewed automobile insurance policies for Aetna.
This matter arose after December 11, 1987, when fifty-seven Aetna agents in New Jersey received notices terminating their authority to write personal lines insurance policies for Aetna and its property and casualty affiliates. The Agents commenced suit in the Superior Court to challenge validity of the terminations. The parties continued, however, to engage in settlement negotiations.
Although Aetna and the Agents were aware of pending legislation which would, if enacted, amend N.J.S.A. 17:22-6.14a with regard to commission rights of terminated agents, they nonetheless entered into a settlement agreement on January 3, 1989. Under this agreement, the Agents were permitted to continue servicing personal lines automobile policies which could not be placed with another insurer but were renewable by statute. (N.J.S.A. 39:6A-3). The agreement also required Aetna to pay the Agents a reduced commission of 9% for a nine-month period commencing March 16, 1989 through December 15, 1989, after which the Agents would continue to service their New Jersey policyholders without compensation.
On July 20, 1989, more than six months after Aetna and the Agents entered into the agreement, an amendment to N.J.S.A. 17:22-6.14a required payment of full commissions to terminated agents who continue to service policies. The language of N.J.S.A. 17:22-6.14a(l), as amended, provides in relevant part:
A company which terminates its contractual relationship with an agent subject to the provisions of subsection d. of this section shall, at the time of the agent's termination, with respect to insurance covering an automobile as defined in subsection a. of section 2 of P.L. 1972, c. 70 (C. 39:6-2), notify each named insured whose policy is serviced by the terminated agent in writing of *258 the following: (1) that the agent's contractual relationship with the company is being terminated and the effective date of that termination; and (2) that the named insured may (a) continue to renew and obtain service through the terminated agent; or (b) renew the policy and obtain service through another agent of the company....
The company shall pay a terminated agent who continues to service policies pursuant to the provisions of this subsection a commission in an amount not less than that provided for under the agency contract in effect at the time the notice of termination was issued.
Further, L. 1989, c. 129, § 2 provides that "this Act shall take effect immediately [July 20, 1989], and shall apply to all policies in effect on or after the effective date."
Notwithstanding their agreement with Aetna, the Agents invoked N.J.S.A. 17:22-6.14a(f) and filed a violation complaint with the Commissioner which resulted in the final Order from which Aetna now appeals. We briefly note that although this court is not bound by an agency's interpretation of a statute, Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973), our Supreme Court has placed "great weight on the interpretation of legislation by the Administrative Agency to whom its enforcement is entrusted." Peper v. Princeton University Board of Trustees, 77 N.J. 55, 69-70, 389 A.2d 465 (1978). We affirm substantially for the reasons expressed by the Commissioner in his written opinion of January 11, 1990.[1]
We add our own recognition that the insurance industry is strongly affected with the public interest, Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 310, 121 A.2d 543 (1956), as expressed through comprehensive legislation regulating the industry. Id.; see also Matter of N.J.A.C. 11:1-20, 208 N.J. Super. 182, 199, 505 A.2d 177 (App.Div. 1986). In furtherance of this interest, the Legislature promulgated N.J.S.A. 39:6A-3 ("No-Fault Law") which requires insurance companies to renew mandated automobile insurance policies unless a specific *259 statutory ground allows cancellation or nonrenewal. It was the Legislature's intent to provide insureds "the advantage of guaranteed renewals of indefinite duration with a particular company." Sheeran v. Nationwide Mutual Insurance Co., Inc., 159 N.J. Super. 417, 422, 388 A.2d 272 (Ch.Div.), aff'd, 163 N.J. Super. 40, 394 A.2d 149 (App.Div. 1978), modified, 80 N.J. 548, 404 A.2d 625 (1979). This need for market continuity was recently evidenced by the enactment of the Fair Automobile Insurance Reform Act, L. 1990, c.8, which requires any carrier intending to withdraw from the automobile insurance market to file an orderly plan of withdrawal with the Department of Insurance for its approval.
If the terms of the January 3, 1989 agreement were to be strictly enforced, Aetna and other similarly situated carriers would be provided with the practical means to circumvent both the No-Fault Law and the Fair Automobile Insurance Reform Act. Through use of the economic disincentives created by reduced and, ultimately, non-existent commissions, the agents would be motivated to seek to replace policies with other carriers or to materially reduce servicing performance for New Jersey policyholders in order to survive economically. Not only would this action facilitate Aetna's effective flight from the New Jersey market, but it would encourage other carriers to engage in the same practice[2], ultimately leaving New Jersey consumers with a chaotic and inadequate personal lines insurance market. Such a result clearly contravenes both expressed legislative intent and the public interest by denying New Jersey policyholders the statutory right of "guaranteed renewals of indefinite duration." N.J.S.A. 39:6A-1 et seq.; see also Sheeran, supra.
*260 Further, we recognize that in this intensely regulated industry, the Commissioner must approve rate structures filed by the carriers. N.J.S.A. 17:29A-1 et seq. Although the Aetna Agents' agreement provides that commissions will be reduced from 15% to zero, neither the record nor our inquiries at oral argument established that Aetna contemplates any reduction in premium rates which were approved based upon the 15% commission structure. The Commissioner's interpretation of N.J.S.A. 17:22-6.14a avoids this unapproved windfall.
Contracts affecting public interest should be construed in a manner that is most favorable to the public. See 3A Corbin, Corbin on Contracts § 550 (1960), and Restatement of Contracts 2d § 178 (1981). When enforcement of a contract inflicts injury upon the public in some way, a court will not hesitate to declare that contract void as against public policy. Manning Engineering, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 138, 376 A.2d 1194 (1977); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403-404, 161 A.2d 69 (1960); Soricelli v. Board of Review & c., 46 N.J. Super. 299, 311, 134 A.2d 723 (App.Div. 1957). The Commissioner thus reasonably and correctly determined that the statutory provisions of N.J.S.A. 17:22-6.14a should prevail over the strict terms of this contract.
The public interest expressed in that statute strongly suggests that New Jersey policyholders should not be deprived of the benefit of continued effective policy service by motivated agents. See also our opinion in Cohen v. Home Ins. Co., 230 N.J. Super. 72, 552 A.2d 654 (App.Div. 1989), where we held that agents who were required to service policies should be compensated under quasi-contract principles.
We therefore construe N.J.S.A. 17:22-6.14a as written, and hold that its provisions apply to all policies in effect on July 20, 1989, the effective date of the amendments to N.J.S.A. 17:22-6.14a. See generally, Savarese v. New Jersey Auto. Full Ins., 235 N.J. Super. 298, 562 A.2d 239 (App.Div. 1989).
*261 As to Aetna's constitutional argument concerning infringement of contract, we find it to be clearly without merit. See Energy Reserves v. Kansas Power & Light, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983); United States Trust Co. v. New Jersey, 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92, 109, reh. den., 431 U.S. 975, 97 S.Ct. 2942, 53 L.Ed.2d 1073 (1977); Hudson County Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 531-32, 52 L.Ed. 828, 832 (1908).
Affirmed.

APPENDIX
Despite the existence of the Settlement Agreement, I find that those provisions of the Agreement concerning commissions are overridden by the statutory provision concerning the compensation of terminated agents set out at N.J.S.A. 17:22-6.14a(l). That legislation evidences a public policy that agents who continue to service automobile insurance policies be compensated for that service. In fact, the amendments in question were passed specifically to address the unique situation in New Jersey where, pursuant to N.J.S.A. 39:6A-3, insurance companies are required to indefinitely renew automobile insurance policies of qualified drivers. Needless to say, the insurance companies are entitled to collect premiums for those policies. However the terminated agents who serviced those policies were not entitled to compensation under N.J.S.A. 17:22-6.14a(d) beyond one year, even though the terminated agents might continue to service the policies indefinitely.
The inequity of this situation was recognized by the Appellate Division in Cohen v. Home Ins. Co., 230 N.J. Super. 72 [552 A.2d 654] (App.Div. 1989). In that case the court considered the right of a terminated agent who continues to service automobile insurance policies without compensation to be reimbursed for those services. Although the court did not have to decide the ultimate issue, it did opine that it would have been prepared to "adjust" the rights of the parties  that is, to provide a remedy to compensate the agent assuming that "statutory, economic, *262 and contractual compulsions" leave both the company and the terminated agent with no viable alternative to continuing their agency relationship with respect to automobile insurance renewals. Id. at 78. In so doing, the Cohen court expressed concern that a terminated agent might continue, because of statutory, economic and contractual compulsions, to service automobile policies but not be compensated for that service. The recent amendments to N.J.S.A. 17:22-6.14a were designed to correct that very situation.
Given the concerns expressed by the Cohen court and the public policy evidenced by the recent legislative enactments, I conclude that, despite the existence of the Settlement Agreement, Aetna is required by N.J.S.A. 17:22-6.14a(l), to compensate the Agents according to the commission terms of the agency contracts which were in effect at the time that the Agents were terminated. In so doing I note that under the terms of the Settlement Agreement, Aetna "recognizes its obligations" under New Jersey law, to continue to renew "through the Agents" all automobile policies except those which Aetna may nonrenew pursuant to law. (Settlement Agreement, paragraph 3). Moreover, Aetna specifically agreed to allow the Agents to continue to offer to renew such business as requested by the Agents (Settlement Agreement, paragraph 3). Finally, Aetna acknowledged that even though the Agents have agreed to use their best efforts to place all automobile policies with other companies, Aetna "recognizes that certain automobile policies will be difficult to place elsewhere," and therefore Aetna agreed not to transfer any of that renewable business to nonterminated agents. (Settlement Agreement, paragraphs 7 and 8). However, even though the Agents continue to service the automobile insurance business after December 15, 1989, they are required to do so without compensation. (Settlement Agreement, paragraph 5.) Thus, the Settlement Agreement recognizes the existence of the very "market compulsions" of which the Cohen court took note. For terminated *263 agents to have to continue servicing automobile insurance policies without compensation, is not in keeping within the contemplation of the legislation in question.
In addition to the Settlement Agreement the parties also signed mutual general releases whereby they released one another from, among other things, any causes of action or claims arising out of, or relating to, any of the issues set out in the pleadings identified in the Settlement Agreement. The question arises as to whether those releases defeat the Agents' right to compensation under N.J.S.A. 17:22-6.14a(l).
"The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 203-204 [188 A.2d 24] (1963). A general release ordinarily covers all claims and demands due at the time of its execution and within the contemplation of the parties. Smith v. Smith, 72 N.J. 350, 359 [371 A.2d 1] (1977). Furthermore, if the parties leave some issues open and unsettled, their intent to do so should be made manifest. 66 Am.Jur.Release section 30.
The releases here are silent as to the pending statutory amendments. However, as noted above, prior to executing the Settlement Agreement and general releases, the parties exchanged a series of correspondence regarding the extent, if any, to which reference should be made to the proposed amendments to N.J.S.A. 17:22-6.14a and their impact on the Settlement Agreement. Finally, by letter dated November 30, 1988 counsel for Aetna agreed to remove any reference to the proposed statutory changes so that the Agents could "reserve their rights on the issue." However, in so doing, Aetna emphasized that it was maintaining its position that any subsequently enacted legislation would have no impact on the Settlement Agreement. Thus, even though the releases are silent, it is clear from the circumstances surrounding of their execution, that Aetna recognized that the Agents were "reserving their *264 rights" as to the issue of the effect of the subsequent legislative amendments on their future rights to receive commissions. Therefore, the general releases in question do not bar the Agents' right to commissions.
For all of the above reasons I conclude that the position taken by Aetna is not consistent with the provisions of N.J.S.A. 17:22-6.14a, as amended. That is, as of July 20, 1989 Aetna was required to comply with the provisions of N.J.S.A. 17:22-6.14a(l), with respect to the payment of commission to the Agents. However, given the unique circumstances of this case, I do not find that there is any basis for sanctioning Aetna for the position it has taken. Therefore,
IT IS on this 11th day of January 1990, ordered that Aetna pay commissions to the Agents on those policies in effect on or after July 20, 1989 and which the Agents have continued to service at the rate provided under the agency contracts in effect on December 11, 1987, the date the notices of agency termination were issued; and
IT IS FURTHER ORDERED that where Aetna has transferred private passenger automobile business to its non-terminated agents after December 15, 1989, which transfers were not made either at the request of the insured or the terminated agent or pursuant to law, Aetna shall return that business within 10 days of receipt of this Order to the terminated agent who had been servicing it. In addition, if Aetna has issued notices to any insureds of its intent to transfer such business to non-terminated agents, it must rescind those notices within 10 days of receipt of this Order.
 /s/ Kenneth D. Merin
 Kenneth D. Merin
 Commissioner
 Dated: 11 January 1990
NOTES
[1] See Appendix which contains an excerpted portion of the Commissioner's Administrative Decision.
[2] As recognized in the Amicus Curiae Brief and Appendix, it is a matter of public knowledge that a number of other insurance companies are presently seeking to withdraw from the market and reduce commissions to the agents who service automobile policies in this State.