169 P.3d 994

Gay PORTER, Sumie Abe as Personal Representative of Motoyoshi Abe, Mark Rodrigues, Glenn Santos, and Duane Sugihara, Plaintiffs/Counterclaim Defendants/Appellees,

v.

Joseph HU, Wayne Wehr, William F. Schnitzer, Michele Clark, American Insurance Agency, and Servco Pacific Inc., Defendants/Counterclaimants/Appellants,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Governmental Units 1–10, Defendants.

Nos. 26438, 26602.

Intermediate Court of Appeals of Hawai'i.

Oct. 4, 2007.

Margery S. Bronster, Alan B. Burdick (Bronster & Hoshibata), on the briefs, Honolulu, for Defendants/Counterclaimants/Appellants.

Colin O. Miwa, W. Keoni Schultz (Cades Schutte LLP), on the briefs, Honolulu, for Plaintiffs/Counterclaim Defendants/Appellees.

FOLEY, Presiding Judge, FUJISE, J., and Circuit Judge WONG in Place of WATANABE and NAKAMURA, JJ., Recused.

Opinion of the Court by FOLEY, J.

In this consolidated appeal, Defendants/Counterclaimants/Appellants Joseph Hu, Wayne Wehr, William F. Schnitzer, Michele Clark, Servco Pacific Inc., and American Insurance Agency appeal from the January 29, 2004 Final Judgment (No. 26438) and the May 4, 2004 First Amended Final Judgment (No. 26602), both filed in the Circuit Court of the Third Circuit.[1]

## I.

In a contract dispute between independent insurance agents and their former employer, Plaintiffs/Counterclaim Defendants/Appellees Gay Porter (Porter), Motoyoshi Abe (Abe), Mark Rodrigues (Rodrigues), Glenn Santos (Santos), and Duane Sugihara (Sugihara) (collectively, Plaintiffs) were independent insurance agents working in Hilo, Hawai'i for American Insurance Agency (AIA). Servco Pacific Inc. (Servco) was the parent company of AIA, and Joseph Hu (Hu), Wayne Wehr (Wehr), William F. Schnitzer (Schnitzer), and Michele Clark (Clark) were employees of

AIA (Hu, Wehr, Schnitzer, Clark, AIA, and Servco are collectively referred to as Defendants).

In the early-to-mid 1990's, Plaintiffs entered into individual contracts with AIA under which Plaintiffs agreed to work as independent insurance agents for AIA. Plaintiffs brought with them numerous clients and insurance accounts that generated commissions (books of business). Plaintiffs' respective contracts provided that either Plaintiffs or AIA could terminate any contract by giving the other party prior written notice of the termination within a certain minimum number of days in advance of the termination date.

In May 2001, Plaintiffs communicated to Hu and Wehr that Plaintiffs were considering the possibility of leaving AIA to work for Business Insurance Service, Inc. (BIS). Plaintiffs gave AIA written notice on June 11, 2001 that they were terminating their contracts with AIA as of September 1, 2001, after which they would begin working for BIS. On July 2, 2001, without prior written notice as required under the contracts, AIA terminated Plaintiffs' employment. AIA retained the books of business generated by Plaintiffs.

On November 9, 2001, Plaintiffs filed a Complaint against Defendants. Plaintiffs' Complaint alleged breach of contract, tortious interference with contractual relations, tortious interference with prospective business advantage, violations of Hawaii Revised Statutes (HRS) Chapter 481A (Uniform Deceptive Trade Practice Act), common law unfair competition, reliance and promissory estoppel, negligent misrepresentation, conversion, and unjust enrichment/accounting. On January 16, 2002, Defendants filed their answer and a Counterclaim against Plaintiffs. Plaintiffs filed their answer to the Counterclaim on February 7, 2002.

Trial began on May 27, 2003, and the jury returned a detailed Special Verdict on June 25, 2003. On Count I of the Complaint (breach of contract), the jury awarded damages to each Plaintiff from AIA in the sum of one dollar. The jury found both Servco and

---

1. The Honorable Ronald Ibarra presided.

AIA liable on Count III (tortious interference with prospective business advantage), but awarded collective damages of $50,859 in favor of Plaintiffs and against only Servco. As to Count IV (violation of HRS Chapter 481A), the jury found in favor of Plaintiffs and ordered injunctive relief. As to Count IX (unjust enrichment), the jury found in favor of Plaintiffs and against AIA in the following amounts: Porter-$22,960, Abe-$4,138, Rodrigues-$23,798, Santos-$23,696, and Sugihara-$12,368. The jury found in favor of AIA and Servco on Counts VII (negligent misrepresentation) and VIII (conversion). As to Count X (punitive damages), the jury awarded $5,000 in punitive damages to each Plaintiff from AIA and the same amount to each Plaintiff from Servco.

As to the Counterclaim, the jury found that Plaintiffs had not breached their agency contracts with AIA, Santos had not breached the Purchase of Assets and Affiliation Agreement with AIA, and Plaintiffs had not breached their duty of loyalty.[2]

The circuit court entered its Final Judgment on January 29, 2004. On February 6, 2004, Plaintiffs filed a (1) Motion to Amend Final Judgment to Correct Clerical Mistakes, (2) Motion for Partial Stay of Injunctive Relief Pending Appeal, and (3) Motion for Order Conditionally Staying Execution of Money Judgment Pending Appeal.

On February 27, 2004, Defendants filed a Notice of Appeal from the Final Judgment (No. 26438).

On April 2, 2004, the circuit court entered an Order Granting in Part Defendants' Motion for Partial Stay of Injunctive Relief Pending Appeal, in which the court vacated the injunctive relief language in paragraph 4(a) and (c) of the Final Judgment and ordered that revised language in the order replace the vacated language. The circuit court also granted Defendants' motion to stay the money judgment portion of the Final Judgment on the condition that Defendants post security. On May 4, 2004, the circuit court granted Plaintiffs' motion to amend the Final Judgment to correct the clerical mistakes.

On May 4, 2004, the circuit court entered its First Amended Final Judgment,[3] which disposed of the claims in Plaintiffs' Complaint as follows:

*Count I* (breach of contract): pursuant to Special Verdict, judgment entered in favor of each Plaintiff; $1 awarded to each Plaintiff from AIA; Plaintiffs to forgo this remedy in favor of their unjust enrichment award.

*Count II* (tortious interference with contractual relations): dismissed as to all Defendants by July 23, 2003 "Order Granting in Part and Denying in Part Defendants' Motion for Directed Verdict Filed on June 12, 2003" (Order Granting Directed Verdict).

*Count III* (tortious interference with prospective business advantage): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to Order Granting Directed Verdict; pursuant to Special Verdict, judgment entered in favor of AIA and against Plaintiffs (non-monetary) and in favor of Plaintiffs and against Servco in the following amounts:

**2.** The jury further found that Defendant Gay Porter (Porter) (1) was liable to American Insurance Agency (AIA) for conversion and awarded AIA damages of $74; (2) had made a negligent misrepresentation to AIA in connection with her forgeries and awarded AIA damages of $148; (3) had made an intentional misrepresentation to AIA in connection with her forgeries and awarded AIA damages of $1; and (4) had been unjustly enriched by $74. The jury also found there was no clear and convincing evidence for punitive damages to be awarded against Porter.

**3.** The First Amended Final Judgment was substantially identical to the Final Judgment with the following exceptions: (1) pursuant to the Order Granting Plaintiff's Motion to Amend Final Judgment to Correct Clerical Mistakes, the circuit court corrected errors in the following paragraphs of the Final Judgment: 18 (deleted the word "except" in line 3), 27 (deleted Joseph Hu (Hu), Wayne Wehr (Wehr), William F. Schnitzer (Schnitzer), and Michele Clark (Clark) from the award of costs and attorneys' fees for the unjust enrichment and Hawaii Revised Statutes (HRS) Chapter 481A claims), and 28 (deleted AIA and Servco Pacific, Inc. (Servco) from the award of costs on the counterclaim); (2) the court included the orders (a) granting the motion to stay money judgment and (b) granting in part the motion for partial stay of injunctive relief; and (3) the language in paragraph 4(a) and (c) was amended to conform to the language in the order granting AIA's and Servco's motion for partial stay of injunctive relief as to Count IV of the Complaint.

| | |
|---|---|
| PORTER | $14,647 |
| ABE | 171 |
| RODRIGUES | 17,667 |
| SANTOS | 15,786 |
| SUGIHARA | 2,588 |
| Total | $50,859 |

*Count IV* (violation of HRS Chapter 481A): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to Order Granting Directed Verdict; judgment entered in favor of Plaintiffs and against Servco and AIA; AIA to publish newspaper advertisements with Plaintiffs' current business addresses; AIA and Servco to disclose to any person requesting such information Plaintiffs' whereabouts and to remove Plaintiffs' names from all AIA's and Servco's correspondence, bills, and insurance-related documents sent to any of Plaintiffs' former customers, to the extent such documents implied that Plaintiffs remained associated with AIA.

*Count V* (common law unfair competition): dismissed against all Defendants pursuant to Order Granting Directed Verdict.

*Count VI* (reliance and promissory estoppel): dismissed against all Defendants pursuant to Order Granting Directed Verdict.

*Count VII* (negligent misrepresentation): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to the Order Granting Directed Verdict; pursuant to Special Verdict, judgment entered in favor of AIA and Servco and against Plaintiffs on the claims asserted by Plaintiffs against AIA and Servco.

4. Footnote 1 of the circuit court's First Amended Final Judgment read: "This Order supercedes and vacates the Jury's advisory verdict in favor of Plaintiffs in the following sums: Gay Porter ($22,960.00); Motoyoshi Abe ($4,138.00); Mark Rodrigues ($23,798.00); Glenn Santos ($23,-696.00)[;] and Duane Sugihara ($12,368.00)."

5. The First Amended Final Judgment resolved AIA's counterclaims against Plaintiffs as follows:

*Count I* (breach of contract): pursuant to Special Verdict, judgment entered for Plaintiffs and against AIA on breach of contract claims and judgment entered for Plaintiff Glenn Santos (Santos) and against AIA on AIA's counterclaim for breach of Purchase of Assets Agreement.

*Count II* (breach of duty of loyalty): pursuant to Special Verdict, judgment entered for Plaintiffs and against AIA.

*Count VIII* (conversion): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to Order Granting Directed Verdict; pursuant to Special Verdict, judgment entered in favor of AIA and Servco and against Plaintiffs on the claims asserted by Plaintiffs against AIA and Servco.

*Count IX* (unjust enrichment/accounting): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to Order Granting Directed Verdict; pursuant to August 6, 2003 "Findings of Fact and Conclusions of Law as to Plaintiff's Unjust Enrichment Claim," judgment entered in favor of Plaintiffs and against Servco and AIA, and Plaintiffs awarded the following sums from Servco and AIA, jointly and severally [4]:

| | |
|---|---|
| PORTER | $ 87,901.20 |
| ABE | 25,519.70 |
| RODRIGUES | 102,078.81 |
| SANTOS | 204,157.62 |
| SUGIHARA | 147,447.17 |
| Total | $567,104.50 |

*Count X* (punitive damages): dismissed against Hu, Wehr, Schnitzer, and Clark pursuant to Order Granting Directed Verdict; pursuant to August 6, 2003 "Order Granting in Part and Denying in Part Defendants' Motion for Judgment Notwithstanding the Jury Verdict Filed July 7, 2003," the jury's award of punitive damages in favor of Plaintiffs and against AIA and Servco vacated.

The First Amended Final Judgment dismissed all counterclaims made by Hu, Wehr, Schnitzer, Clark, and Servco against Plaintiffs and resolved AIA's counterclaims against Plaintiffs.[5]

*Count III* (fraud): pursuant to August 19, 2003 "Order Granting in Part and Denying in Part Plaintiffs' Motion for Directed Verdict" (August 19, 2003 Order), AIA's claims dismissed against all Plaintiffs except Porter; as to Porter, the parties stipulated on June 24, 2003 not to send this count to the jury.

*Count IV* (conversion): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs except Porter; pursuant to Special Verdict, judgment entered for AIA and against Porter and AIA awarded $74 from Porter; AIA elected to forego this remedy in favor of its counterclaim for negligent misrepresentation.

*Count V* (intentional misrepresentation): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs except Porter; pursuant to Special Verdict, judgment entered for AIA and against Porter for $1.

The First Amended Final Judgment awarded:

(1) discovery sanctions in favor of Plaintiffs and against Defendants;

(2) sanctions in favor of Defendants and against Plaintiffs;

(3) attorneys' fees in the amount of $141,776.12 on the Unjust Enrichment Claim and $295,074.67 on the HRS Chapter 481A Claim, as well as costs in the amount of $66,825.15, in favor of Plaintiffs and against AIA and Servco, pursuant to the October 14, 2003 "Order Granting in Part Plaintiffs' Motions for Attorneys' Fees and Costs Pursuant to HRS § [sic] 481A[ ] and Pursuant to HRS §§ 607–9, 607–14";

(4) costs in the amount of $2,809.77 in favor of Hu, Wehr, Schnitzer, and Clark and against Plaintiffs, pursuant to the November 14, 2003 "Clerk's Taxation of Costs in Favor of [Hu], [Wehr], [Schnitzer] and [Clark] and Against Plaintiffs"; and

(5) interest at the rate set forth in HRS § 478–3 on all unpaid amounts from May 4, 2004 through the date of payment.

Defendants filed a notice of appeal on May 27, 2004 from the First Amended Final Judgment (No. 26602). On August 11, 2004, the Hawai'i Supreme Court consolidated appeal Nos. 26438 and 26602.

On appeal, Defendants argue the circuit court erred by:

(1) awarding unjust enrichment to Plaintiffs and against AIA and Servco in an amount totaling $567,104.50 because Plaintiffs had an adequate remedy available at law, the unjust enrichment award constituted a double recovery for Plaintiffs, and the cir-

cuit court effectively overrode the jury's verdict on some factual issues;

(2) awarding unjust enrichment to Plaintiffs and against AIA and Servco in an amount totaling $567,104.50 because Plaintiffs' calculations of the allegedly unjust enrichment were uncertain and incomplete;

(3) allowing Plaintiffs to adduce at trial evidence of their expert's revised calculations of unjust enrichment, which calculations Plaintiffs had not previously disclosed to Defendants in response to discovery requests;

(4) awarding attorneys' fees to Plaintiffs in the amount of $141,776.12 pursuant to an assumpsit statute because Plaintiffs' claims sounded in tort rather than assumpsit; and

(5) awarding attorneys' fees to Plaintiffs in the amount of $295,074.67 on Plaintiffs' HRS Chapter 481A claim because the award was grossly disproportionate to the fees that Plaintiffs actually incurred.

## II.

### A. Abuse of Discretion

An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

### B. Evidentiary Rulings

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can

---

*Count VI* (negligent misrepresentation): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs except Porter; pursuant to Special Verdict, judgment entered for AIA and against Porter for $148.

*Count VII* (forgery): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs except Porter; as to Porter, the parties stipulated on June 24, 2003 to submit a Special Verdict form to the jury that did not directly address this count.

*Count VIII* (tortious interference with business), *Count IX* (violation of HRS Chapter 481A),

and *Count X* (common law unfair competition): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs.

*Count XI* (unjust enrichment): pursuant to August 19, 2003 Order, AIA's claims dismissed against all Plaintiffs except Porter; pursuant to Special Verdict, judgment entered for AIA and against Porter for $74.

*Count XII* (punitive damages): pursuant to Special Verdict, judgment entered for Plaintiffs and against AIA.

yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawaii*, 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993). "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Timoteo*, 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997) (internal quotation marks and citation omitted).

## C. Findings of Fact (FOFs)

█ [The appellate] court reviews the trial court's FOFs under the clearly erroneous standard. *Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citations omitted).

An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citing *Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

*Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (brackets in original omitted).

## D. Conclusions of Law (COLs)

█ [The appellate] court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

*Bhakta*, 109 Hawai'i at 208, 124 P.3d at 953 (internal quotation marks, citations, and brackets in original omitted).

## E. Equitable Relief

█ "The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant." *Aickin v. Ocean View Invs. Co., Inc.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (internal quotation marks, citation, and brackets omitted).

## F. Attorney's Fees

█ This court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Chun v. Bd. of Trustees of the Employees' Retirement Sys. of the State of Hawai'i*, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005) (internal quotation marks, citations, brackets, and ellipses omitted; block quote format changed).

## III.

## A. Unjust Enrichment

Defendants challenge the circuit court's unjust enrichment award. First, Defendants argue that because Plaintiffs had an adequate remedy at law, the circuit court erred when it gave Plaintiffs an award predicated on a theory of unjust enrichment. Second, the circuit court erred by allowing Plaintiffs to elect the unjust enrichment award of $567,104.50 instead of the nominal $5 breach of contract damages or the $50,859 tortious interference damages. Third, the circuit court erred by awarding the equitable remedy of unjust enrichment on top of the contract and tort damages, thus resulting in a double recovery. Fourth, the unjust enrich-

ment award was contrary to the jury's findings and thus improperly infringed upon Defendants' right to a jury trial as guaranteed by the United States and Hawai'i Constitutions. Fifth, the unjust enrichment award was too large.

In their complaint, Plaintiffs alleged in relevant part:

### COUNT I. BREACH OF CONTRACT

. . . .

50. Each of the Plaintiffs performed their respective contracts in good faith and spent substantial time and effort to perform their respective contracts.

51. AIA materially breached each of the contracts that AIA had with Plaintiffs when AIA wrongfully terminated Plaintiffs on July 2, 2001.

52. As a result of AIA's breaches of contract, Plaintiffs have sustained damages in amounts to be proven at trial.

. . . .

### COUNT III. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

. . . .

63. Plaintiffs had business contracts with their clients to provide insurance coverage to those clients.

64. Plaintiffs reasonably expected and relied upon being able to renew those contracts and policies with Plaintiffs' clients when those policies came due for renewal.

65. The AIA Defendants [AIA, Hu, Wehr, Schnitzer, and Clark] knew of the relationships between Plaintiffs and Plaintiffs' clients and knew that Plaintiffs expected to renew their contracts with Plaintiffs' clients.

66. The AIA Defendants had knowledge of Plaintiffs' expectations and reliance upon continuing that relationship with Plaintiffs' clients after the Plaintiffs left the employment of AIA.

67. The AIA Defendants by their actions of misrepresentation to Plaintiffs['] clients purposefully engaged in conduct with the intent to interfere with Plaintiffs' abilities to renew Plaintiffs' relationships with Plaintiffs' clients.

68. The AIA Defendants' actions are the direct and legal causation of the interference and impairment that has prevented Plaintiffs from renewing their relationship with Plaintiffs' clients.

69. As a direct result of the AIA Defendants' interference, Plaintiffs suffered damages in the amounts to be shown at the time of trial.

. . . .

### COUNT IX. UNJUST ENRICHMENT/ACCOUNTING

. . . .

92. The AIA Defendants have been unjustly enriched by Plaintiffs' former clients who were diverted away from Plaintiffs due to the AIA Defendants' misrepresentation to those clients.

93. Inequity would result if the AIA Defendants were allowed to reap the fees, commissions and profits gained from Plaintiffs' former clients who were diverted away from Plaintiffs due to the AIA Defendants' tortious acts against Plaintiffs.

94. Plaintiffs are therefore entitled to an order requiring AIA Defendants to disgorge to Plaintiffs all profits that AIA Defendants have acquired and continue to acquire from Plaintiffs' former clients since the Plaintiffs' termination from AIA.

In its Special Verdict, the jury found:

(1) AIA breached its contract with each individual Plaintiff. The jury assessed damages in the amount of $1 to each Plaintiff.

(2) Servco and AIA had been unjustly enriched from each Plaintiff in the following amounts [6]:

---

**6.** The circuit court's August 6, 2003 Findings of Fact and Conclusions of Law as to Plaintiffs' Unjust Enrichment Claim (FOF/COL Re Unjust Enrichment Claim) indicates that this portion of the jury's special verdict was advisory.

| PORTER: | $22,960 |
| ABE: | $ 4,138 |
| RODRIGUES: | $23,798 |
| SANTOS: | $23,696 |
| SUGIHARA: | $12,368 |

(3) AIA and Servco were liable on Plaintiffs' tortious interference counts. The jury assessed damages against only Servco in the following amounts:

| PORTER | $14,647 |
| ABE | $ 171 |
| RODRIGUES | $17,667 |
| SANTOS | $15,786 |
| SUGIHARA | $ 2,588 |

(4) Porter was unjustly enriched in the amount of $74.

In its August 6, 2003 Findings of Fact and Conclusions of Law as to Plaintiffs' Unjust Enrichment Claim (FOF/COL Re Unjust Enrichment Claim), the circuit court provided in relevant part:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO PLAINTIFFS' UNJUST ENRICHMENT CLAIM

. . . .

Count IX of Plaintiffs' Complaint filed November 9, 2001, is an equitable claim for unjust enrichment and accounting (the "Unjust Enrichment Claim"), and while it was tried upon the facts with an advisory jury, the jury was not instructed on the *measure* for any such recovery.

. . . .

### I. FINDINGS OF FACT

\* \* \*

### E. Defendants AIA and Servco Were Unjustly Enriched

51. At the time of the termination, Plaintiffs were the only independent agents at the AIA–Hilo office.

52. Plaintiffs lost a substantial portion of their books of business as a result of the unjustified and invalid termination, and the failure to provide Plaintiffs with complete information on their customers' policies. They have not recovered the lost books of business.

53. Defendant AIA received a substantial windfall benefit in the form of the books of business lost by Plaintiffs, which AIA did not purchase. The lost books of business have generated gross insurance commissions for AIA totaling approximately $714,000.00 since the date of the termination through 5/31/03 alone, according to the testimony of Mark Sakamoto, who is and was at all times relevant the Controller of AIA and its representative agent. At most Plaintiffs would have been entitled to 50% of the commissions or $357,000. AIA will continue to receive gross commissions on those books of business, which will exceed the $714,000.00 received through May 31, 2003. Commissions in the amount of $77,000.00 were subsequently paid to Plaintiffs.

54. Defendant AIA received and retained the books of business without adequate legal basis and without paying for it, at the expense of Plaintiffs who spent years of labor and funds in developing their respective books of business.

55. Plaintiffs' Contracts provided that, on average, 50% of the commissions collected by AIA were to be paid to Plaintiffs.

56. Defendant Wehr admitted that the total commissions received by the AIA–Hilo office on Plaintiffs' business totaled $429,403.00 for the first year after the termination, as reflected in the Trending Report. Thus, aside from the $77,000.00 in commissions paid to Plaintiffs, the commissions received by AIA were not shared with Plaintiffs, even though they were based upon Plaintiffs' books of business.

57. According to Plaintiffs' expert witness, John Cavanah, the total value of Plaintiffs' books of business may reasonably be estimated to be $644,104.50, which represents the amount a purchaser would have paid Plaintiffs for the benefit received by AIA (*viz.* the portion of Plaintiffs' books of business lost by them to AIA) and the fact that Plaintiff Glenn Santos purchased the book of business of his father, Robert Santos, each Plaintiff's share of the benefits unjustly received by AIA may be computed as follows:

| Gay Porter: | 15.5% |
| Motoyoshi Abe: | 4.5% |
| Mark Rodrigues: | 18.0% |
| Glenn Santos: | 36.0% |
| Duane Sugihara: | 26.0% |

59. Based on his experience in the insurance industry, Mr. Cavanah derived the total value of Plaintiffs' lost books of business by multiplying the annual gross commissions attributable to that business ($429,403.00 per Plaintiffs' Exhibit 317) by a factor of 1.5 (the accepted average multiple).

60. The total value of the lost books of business may be reduced by the amount of commissions paid to Plaintiffs[ ] post-termination ($77,000.00).

....

## II. CONCLUSIONS OF LAW

....

2. The knowledge of a corporation's officers is deemed to be the knowledge of the corporation. *Imperial Finance Corp. v. Finance Factors, Ltd.*, 53 Haw. 203, 206, 490 P.2d 662, 664 (1963)[1971]; *Henry Waterhouse Trust Co. Ltd. v. Home Ins. Co. of Hawaii, Ltd.*, 27 Haw. 572, 578 (1923). Accordingly, the knowledge and conduct of Hu, Wehr, Clark, Sakurai, and Fukunaga shall be deemed to be the knowledge and conduct of the corporate defendants that employed them.

3. In order for Plaintiffs to prevail on their Unjust Enrichment Claim against Defendants AIA and Servco, they must prove each of the following elements by a preponderance of the evidence: (a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs. *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985). "One who receives a benefit is ... enriched, and he would be unjustly enriched if its retention would be unjust ... [sic] And it is axiomatic that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Id.* (quoting Restatement of Restitution § 1 cmt. b (1937)). "Enrichment is unjust, in legal contemplation, to the extent it is without adequate legal basis." Restatement (Third) of Restitution & Unjust Enrichment § 1 (discussion draft) (March 31, 2000).

4. A party entitled to restitution may have in an appropriate situation one or more of the following remedies: (a) the use of self-help, (b) specific restitution of the subject matter, (c) the imposition of a constructive trust, (d) the enforcement of an equitable lien, (e) the subrogation of the party to the position of a prior claimant, or (f) an order for the payment of money by the person who received the benefit. *Small v. Badenhop*, 67 Haw. 636[626], 638, 701 P.2d 647, 655 (1985); Restatement of Restitution § 4 (1937).

5. Restitution, which imposes quasi-contractual liability for unjust enrichment, restores a person to the position he or she formally occupied, either by the return of something which he or she formerly had or by the receipt of its equivalent in money. *Hong v. Kong*, 5 Haw.App. 174, 183, 683 P.2d 833, 840–41 (1984).

6. In this case, it is apparent that Defendants were unjustly enriched at the expense of Plaintiffs and that they received a benefit without adequate legal basis, in view of the following, among other things:

a. Over the years prior to the termination, Plaintiffs each developed a book of business consisting of hundreds of relationships with insurance customers that they justifiably anticipated would generate substantial renewal commissions based on past experience[;]

b. As a result of the termination and Defendants' improper conduct, Plaintiffs lost, and AIA received, a portion of Plaintiffs' books of business that generated for AIA $714,000.00 in gross commissions through 5/31/03 alone, none of which was shown to have been attributable to any "new business" written by AIA after Plaintiffs' Contracts were terminated;

c. When AIA paid Plaintiffs a total of $77,000.00 for commissions earned on premiums collected or deemed earned prior to the termination, Defendants did not pay Plaintiffs for the books of business lost by Plaintiffs and received by AIA nor did they share with Plaintiffs the commissions derived from Plaintiffs' books of business;

d. While Defendant Servco was not directly paid the post-termination renewal commissions, it nevertheless indirectly

benefitted from AIA's retention of Plaintiffs' books of business;

e. Even though Plaintiffs owned their books of business, AIA took a substantial portion of it by means of the surprise contract terminations, which were invalid, legally unjustified, and motivated by Defendants' plan to use the income from the agents' books of business to support the continued existence of the AIA–Hilo office.

7. While it is stated that an action for unjust enrichment cannot lie in the face of an express contract, a contract does not preclude restitution if it does not address the specific benefit at issue. *See Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 730–31 (8th Cir.1995) ("if an existing contract does not address the benefit for which recovery is sought, quantum meruit is available regarding those items about which the contract is silent."); 13 Holmes' Appleman on Insurance (2d), § 98.4C at 739 ("There may also be an implied contract between the parties whereby the agent would still receive renewal commission on policies he sold even though he was not with the company when the policies were renewed...."); 66 Am.Jur.2d, Restitution and Implied Contracts, § 25 at 622 (2001) ("... There may be an implied contract on a point not covered by an express contract.") For instance, in *Maui Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968), the Hawaii Supreme Court affirmed the trial court's award on a counterclaim for the rental value of machinery and equipment sold pursuant to a contract of sale. The sale was contingent on certain government approvals which did not occur, but plaintiff used the equipment while awaiting the approvals. Based on a theory of quantum meruit, where the contract did not expressly address such use of the equipment, the defendant was entitled to recover the rental value. *See also, Cohen v. Home Ins. Co.*, [230 N.J.Super. 72,] 552 A.2d 654, 658 (N.J.Super.Ct.App.Div.1989) ("if plaintiff ... should be proved to have no commission right on an express contract basis, he has nevertheless made out a prima facie case of quasi-contract ..." [sic]); *Leonard v.*

*Louisiana Health Serv. & Indemnity Co.*, 505 So.2d 173, 175 (La.Ct.App.1987) (held implied agreement existed between insurance company and independent insurance agents for payment of renewal commissions after agents' association terminated, where the record did "not reflect whether a specified agreement existed with respect to the payment of renewal commissions to Plaintiffs after they terminated their association with Blue Cross.").

8. The agency contracts between Plaintiffs and Defendant AIA do not expressly address the benefit at issue here: to what extent is an ex-agent compensated for the loss of his or her book of business caused by AIA's unjustified and wrongful termination of the agent's contract. Paragraph 5(a) of Plaintiff Porter's Agent's Contract provides, for instance, that "the Agent shall not be entitled to any commission or other claims unless they shall have been earned on business written prior to" termination for certain specified causes. Plaintiffs Abe and Sugihara had identical provisions in their agency contracts. Paragraph 5(b) of the Agent's Agreements of Plaintiffs Rodrigues and Santos is similar. However, those provisions do not speak to the situation here (nor do any other provisions), where Plaintiffs were terminated *not* for the specified reasons but instead for ulterior purposes.

(Record references omitted.)

On October 6, 2003, Plaintiffs filed a Notice of Submission of Proposed Final Judgment and Election of Remedies, in which Plaintiffs elected to forego the $1 per Plaintiff breach of contract award (Count I) in favor of the more substantial unjust enrichment award (Count IX).

## 1. Unjust Enrichment and Adequate Remedy at Law

■ This court reviews a circuit court's exercise of its equitable powers under the "abuse of discretion" standard. *Aickin*, 84 Hawai'i at 453, 935 P.2d at 998. Addressing the propriety of the circuit court's unjust enrichment award, we first describe equitable remedy as it is known in Hawai'i. The

Hawai'i Supreme Court most recently addressed the subject in *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 100 P.3d 60 (2004):

> Unjust enrichment, as a claim for relief, is not clearly defined in either the Hawaii Revised Statutes or our jurisprudence. As far as we can tell, our best explanation of unjust enrichment has been as follows:

> > It is a truism that "[a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or cho[ ]ses in action, . . ., or in any way adds to the other's security or advantage." *Restatement of Restitution* § 1 comment b (1937). One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust. *Id.* § 1 comment a. And it is axiomatic that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* § 1. We realize unjust enrichment is a broad and imprecise term defying definition. But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice. *See* A. Denning, *The Changing Law* 65 (1953).

*Id.* at 502, 100 P.3d at 72 (footnotes and emphasis in original omitted) (quoting *Small v. Badenhop*, 67 Haw. 626, 635–36, 701 P.2d 647, 654 (1985)). A valid "claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." *Durette*, 105 Hawai'i at 504, 100 P.3d at 74 (internal quotation marks, citation, and brackets omitted).

 As to the question of when an equitable remedy may be invoked, this court observes the principle, long-invoked in the federal courts, that "equity has always acted only when legal remedies were inadequate." *Beacon Theatres, Inc. v. Westover*, 359 U.S.

500, 509, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959) (footnote omitted). This court has observed that "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law." *Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture (Regency Tower Venture)*, 2 Haw.App. 506, 513, 635 P.2d 244, 249 (1981). Defendants argue that Plaintiffs had an adequate remedy at law (contract damages) and therefore should not have been awarded damages under the equitable theory of unjust enrichment.

 Plaintiffs respond that the contract did not provide for redress of the specific harm done in this case, citing to *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir.1996), and *EBC I, Inc. v. Goldman Sachs & Co.*, 7 A.D.3d 418, 420–21, 777 N.Y.S.2d 440, 444 (N.Y.App.Div.2004), in support of their argument that restitution is appropriate in situations like this where an express contract does not fully address an injustice. While no Hawai'i case explicitly endorses this principle, this court views it as a logical extension of the principle set forth above in *Regency Tower Venture*, and therefore we endorse its application in situations like this one.[7]

In COL 8 of its FOF/COL Re Unjust Enrichment Claim, the circuit court recognized that the contract did not expressly address the compensation of an agent who wrongfully lost his book of business as a result of the parent insurer's misconduct. Defendants do not challenge this conclusion of law on appeal. Defendants rely instead on the assertion that the contract between the parties provided Plaintiffs with adequate redress, citing a number of cases in support of that theory. However, Defendants fail to show that the contract actually addressed a situation like this—where Defendants are alleged to have wrongfully subverted the con-

---

7. Defendants cite *Tropic Builders, Ltd. v. Naval Ammunition Depot Lualualei Quarters, Inc.*, 48 Haw. 306, 323–24, 402 P.2d 440, 450–51 (1965), in support of their argument that unjust enrichment can never exist where the adverse parties have some type of express contract. However,

*Tropic* concerns the rights of third-parties seeking to recover on a theory of implied contract based on benefits received where a valid contract existed between other parties and is therefore inapplicable to this case.

tractual relationship to deprive Plaintiffs of their books of business. Moreover, the circuit court did not, as Defendants contend, convert a contract case into an equity case, thereby depriving Defendants of a jury trial. Rather, the circuit court conducted a jury trial on the matters triable to a jury and also imposed an equitable remedy upon determining that the contract remedies available did not adequately address Defendants' unjust enrichment (a matter within the circuit court's discretion).

■ Plaintiffs also lacked an appropriate tort remedy. Although the jury returned a verdict in their favor and awarded tort damages, Plaintiffs contend the jury's award was insufficient to adequately compensate their losses as a result of Defendants' wrongful conduct. This court agrees with Plaintiffs and concludes that the mere availability of some figure of tort damages does not by itself preclude an award founded on unjust enrichment. As Palmer notes in his treatise on restitution, "[t]he objectives of the two remedies are different, however: in the damage action the plaintiff seeks to recover for the harm done to him, whereas in the restitution action he seeks to recover the gain acquired by the defendant through the wrongful act." 1 George E. Palmer, *The Law of Restitution* § 2.1, at 51 (1978). Although the tort and unjust enrichment claims are, in a sense, founded on the same wrongful conduct—the deprivation of Plaintiffs' books of business by Defendants—the remedies sought are sufficiently distinct, in this court's view, to exclude this case from the realm of "double recovery" situations.

We conclude, in light of the foregoing, the circuit court did not abuse its discretion in ruling that no adequate remedy at law existed and the equitable remedy of unjust enrichment was therefore appropriate.

### 2. Election of Remedy

■ Defendants next argue that the circuit court "erred by permitting Plaintiffs to 'elect' the unjust enrichment award as against the jury's awards on Plaintiffs' breach of contract and (implicitly) tortious

interference claims." Defendants further contend that "[b]y making a purported 'election' without any supporting memorandum explaining why [Plaintiffs] should be allowed to 'elect' the equitable remedy over the remedy at law, [Plaintiffs] avoided the obligation to explain how their unjust enrichment award was not merely an equitable overlay on the jury awards on their claims for breach of contract and tortious interference." Defendants cite to the inapplicable case of *Tropic Builders, Ltd.* to support their argument as to the impropriety of an unjust enrichment award. Defendants also argue that Plaintiffs should have elected remedies through a formal motion, not by a written election of remedies. Defendants cite to two cases from other jurisdictions in which parties filed motions for election of remedies. Neither case is binding on this court, and neither states any rule requiring election of remedies to be made by a contested motion.[8] This court is aware of no case, and Defendants direct this court to none, suggesting that a prevailing party must elect among various remedies by motion. The circuit court did not err in allowing Plaintiffs to elect their remedies in the manner they chose.

### 3. Right to Jury Trial

We now address whether the question of unjust enrichment and the measure of damages was one for the jury and whether Defendants were denied their right to a jury trial by virtue of the circuit court's imposing an unjust enrichment award against them.

■ The Hawai'i Constitution, article I, § 13, provides in part: "In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved." In addition, Hawai'i Rules of Civil Procedure (HRCP) Rule 38(a) provides that "[t]he right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate." Such right is "inviolate in the absence of an unequivocal and clear showing of a waiver of

---

**8.** Defendants cite to *Collins v. Talley*, 146 N.C.App. 600, 602, 553 S.E.2d 101, 102 (2001),

and *Elliott v. Aspen Brokers, Ltd.*, 811 F.Supp. 586, 590–91 (D.Colo.1993).

such right either by express or implied conduct." *Lii v. Sida of Hawaii, Inc.,* 53 Haw. 353, 355, 493 P.2d 1032, 1034, *cert. denied,* 408 U.S. 930, 92 S.Ct. 2493, 33 L.Ed.2d 342, *reh'g denied,* 409 U.S. 903, 93 S.Ct. 107, 34 L.Ed.2d 166 (1972).

■ The dispositive question, therefore, is whether a cause of action for unjust enrichment is a "suit at common law" under the Hawai'i Constitution. Because article I, § 13 is patterned after the Seventh Amendment to the United States Constitution, this court looks for guidance to interpretations of the Seventh Amendment.[9] *Harada v. Burns,* 50 Haw. 528, 532, 445 P.2d 376, 380 (1968). "The provisions found in the federal and Hawaii constitutions preserving the right to a jury trial in common law actions do not extend to suits of an equitable nature." *Id.* at 532–33, 445 P.2d at 380.

■ The test to determine whether a suit is "at common law" is whether the cause of action seeks "legal" or "equitable" relief; the nature of the issues and the remedy sought determines whether a jury trial is warranted. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 97, 112 S.Ct. 494, 497, 116 L.Ed.2d 419 (1991). This flows from the historical tradition of equity actions being tried to a judge and those at law to a jury. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987).

In analyzing whether this action seeking relief under an unjust enrichment theory should be tried to a jury, this court is mindful of its holding in *Regency Tower Venture,* where we considered a case brought by an apartment owners' association against the building's developers, architect, and contractors. 2 Haw.App. at 507–508, 635 P.2d at 246. The Board of Directors sought damages for, inter alia, alleged defects in the building's design and construction. *Id.* at 508–09, 635 P.2d at 246. This court noted that "[i]n an action involving equitable claims, the jury may render a verdict which the court may use as an advisory aid in making findings of fact," but concluded that

the only relief sought was money damages and the action was one at law and triable as of right to a jury. *Id.* at 513, 635 P.2d at 249.

■ In *Regency Tower Venture* the damages were entirely quantifiable by reference to specific numbers set forth in the contract and susceptible of proof by reference to that contract. *Id.* at 513, 635 P.2d at 249–50. The damages in the instant case are susceptible of no such easy proof and thus are not a "simple debt due to overpayment" as in *Regency Tower Venture. Id.* at 250, 635 P.2d at 513.

While Plaintiffs sought monetary damages under a theory of unjust enrichment, that fact alone cannot pigeonhole the matter as an "action at law," as described in *Regency Tower Venture.* Because Plaintiffs' damages were not ascertainable or remediable by reference to the contractual remedies provided for, equitable remedies were appropriate. The circuit court did not abuse its discretion by considering the jury's verdict to be only advisory or by imposing an equitable remedy in this case.

## 4. Conflict with the Jury Award

Defendants cite *SCI Management Corp. v. Sims,* 101 Hawai'i 438, 71 P.3d 389 (2003), in support of their assertion that the circuit court committed constitutional error by contravening the jury's award and making findings of fact conflicting with those made by the jury. In *SCI Management,* the Hawai'i Supreme Court acknowledged:

> Where an action involves claims for both legal and equitable relief, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." [*Curtis v. Loether,* 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009 n. 11[, 39 L.Ed.2d 260] (1974)]; *accord Lytle v. Household Manufacturing, Inc.,* 494 U.S. 545, 550, 110 S.Ct. 1331[, 1335], 108 L.Ed.2d 504 (1990); *Tull v. United States,* 481 U.S. 412, 425, 107 S.Ct.

---

9. The Seventh Amendment to the United States Constitution reads in relevant part: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]"

1831[, 1839], 95 L.Ed.2d 365 (1987). Moreover, "the trial court is precluded from ruling, in the first instance, on any equitable claims that may determine the outcome of the legal claims." *Lee v. Aiu,* 85 Hawai‘i 19, 29, 936 P.2d 655, 665 (1997) (citing *Harada v. Burns,* 50 Haw. 528, 445 P.2d 376 (1968)). "When a jury is called upon to make findings in connection with both legal and equitable matters resting upon the same set of facts, the trial court is bound by the jury's findings of fact when making its equitable determinations." [*Lee,* 85 Hawai‘i at 29, 936 P.2d at 665] (citations omitted). *Cf. Mathewson v. Aloha Airlines, Inc.,* 82 Hawai‘i 57, 79 n. 22, 919 P.2d 969, 991 n. 22 (1996) ("in a jury trial of an action seeking equitable and legal remedies, the jury decides legal questions and awards legal damages and the court decides equitable questions and awards equitable relief."). *Id.* at 452 n. 12, 71 P.3d at 403 n. 12 (brackets in original omitted).

■ Defendants contend the circuit court's decision to award damages under a theory of unjust enrichment conflicted with the jury's award on the tort and contract claims. This argument is misplaced. The circuit court did not countermand any finding of the jury. The jury found that AIA had been unjustly enriched, and the circuit court's finding that AIA had been unjustly enriched did not conflict with that finding. This stands in marked contrast to the case of *Ag Services of America, Inc. v. Nielsen,* 231 F.3d 726 (10th Cir.2000), cited by Defendants, where the trial court expressly countermanded a jury's finding of no liability on a conversion claim and imposed equitable remedies in lieu of a tort recovery. *Id.* at 729. The United States Court of Appeals for the Tenth Circuit held that the trial judge's actions (imposing equitable remedies based on a conversion claim) expressly countered the inferences of no liability as found by the jury. *Id.* at 732.

The circuit court in the instant matter did not countermand anything in the jury's Special Verdict or any of the inferences that can

logically be drawn from that verdict. Moreover, this court considers it noteworthy that counsel for Defendants accepted in open court that the jury would be considering the question of unjust enrichment in a purely advisory capacity:

> THE COURT: Now, regarding the equitable claim that is being presented to the jury, that is for advisory only. The unjust enrichment. Is that correct, [Plaintiffs' Counsel]?
>
> [Plaintiffs' Counsel]: Yes, it is.
>
> THE COURT: [Defendants' Counsel]?
>
> [Defendants' Counsel]: Yes, your Honor.

For the reasons set forth above, this court concludes that Plaintiffs' action properly invoked the equity jurisdiction of the court and the circuit court did not abuse its discretion by disregarding the jury's advisory verdict on unjust enrichment and imposing the higher figure.[10]

### 5. Double Recovery

Defendants contend that when the circuit court imposed an unjust enrichment award of $567,104.50 and allowed Plaintiffs to elect that remedy over the jury-awarded contract damages of $1 per Plaintiff, while retaining the tort damages, it had the effect of bestowing on Plaintiffs a prohibited "double recovery" and unconstitutional "additur" in contravention of the jury's findings on the tort and contract claims. Defendants base that assertion on their argument that the unjust enrichment claim was so similar to the tort claim that allowing recovery under both theories amounted to double compensation for the same harm. Although we have already concluded the circuit court did not contravene any of the jury's findings, we shall nonetheless address the question of whether Plaintiffs received an improper double recovery.

■ As Palmer described in his treatise on restitution (see subsection 1 *supra*), the damages alleged to have resulted from the tort are different in type and character from those arising under the equitable principle of

---

**10.** In its FOF/COL Re Unjust Enrichment Claim, the circuit court stated that "the jury was not instructed on the *measure* for any such recovery."

unjust enrichment. That Plaintiffs were found to be victims of a tort does not mean that Defendants were not also unjustly enriched by Defendants' actions. Defendants cite *Blair v. Ing*, 95 Hawai'i 247, 259 n. 10, 21 P.3d 452, 464 n. 10 (2001), in support of their double-recovery argument. *Blair* held that a non-client may sue an attorney under either a negligence or contract theory if the non-client is entitled to a standard of care from the attorney, but may not recover under both theories for the same damages. *Id.* at 259 & n. 10, 21 P.3d at 464 & n. 10. In this case, Plaintiffs never attempted to recover the same damages twice; rather, the alternative contract and tort theories were inadequate to compensate Plaintiffs for the harms suffered.

▮ Defendants also assert that because Plaintiffs sought attorneys' fees on a theory of assumpsit, Plaintiffs should be estopped from denying their claims were contractual and thus be precluded from recovering in equity and should be limited to the $1 per Plaintiff recovery returned by the jury on the breach of contract claims. This argument lacks merit because assumpsit embraces equitable actions of this type.

In deciding whether a claim is "in the nature of assumpsit," the Hawai'i Supreme Court has stated: "[A]ssumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi[-]contractual obligations." *Blair v. Ing*, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (internal quotation marks and citation omitted) (quoting *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 264, 990 P.2d 713, 734 (1999)).

In this context, it is clear that the category of actions in the nature of assumpsit embraces more than mere contract actions. There exists no inherent conflict between an unjust enrichment award and a finding that the claim it is based on sounds in assumpsit. Assumpsit embraces quasi-contractual remedies such as unjust enrichment; therefore, it is not inconsistent to press an unjust enrichment claim, while noting that it arises in the nature of assumpsit, and contract and tort claims. The circuit court committed no error by allowing Plaintiffs to recover on unjust

enrichment while considering the claim to be in the nature of assumpsit.

### 6. Amount of the Unjust Enrichment Award

▮ Defendants argue that Plaintiffs' calculations as to the unjust enrichment award were "so uncertain, erroneous, and incomplete that they should not have formed the basis for an unjust enrichment award." Defendants also argue the damage calculations failed to take into account several factors that Defendants claim were important and that would have resulted in a lower total damages figure. Defendants contend the circuit court violated two jury instructions by adopting the damage calculation that it did: (a) Hawai'i Standard Civil Jury Instruction (HSCJI) No. 15.10 (1999), which required the jury to award only nominal damages if Plaintiffs failed to prove their damages with reasonable certainty; and (b) HSCJI 3.1 (1999) (burden of proof) because Plaintiffs failed to prove that each account retained by AIA was retained for improper reasons. Such assertions amount to a challenge to the circuit court's factual findings on this point. "In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Chun*, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation marks and citations omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). Defendants' assertions are conclusory in nature and unsupported by any evidence that they introduced any competing measure of damages so persuasively stronger as to render the circuit court's reliance on the opinion of Plaintiffs' expert clearly erroneous. In challenging the circuit court's findings, Defendants point out several instances where they attempted to impeach the calculations performed by Plaintiffs' expert. Challenging the circuit court's findings in this manner amounts to an attack on witness credibility.

It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may

accept or reject any witness's testimony in whole or in part.... An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.

*State v. Eastman*, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (citations omitted).

For these reasons, the circuit court did not clearly err in adopting Plaintiffs' proffered damage calculations.

## B. The Testimony of Plaintiffs' Expert Witness

Plaintiffs designated John Cavanah (Cavanah) as their damages expert, and Defendants deposed him on April 7, 2003 and May 16, 2003. Trial commenced on May 27, 2003. On June 3, 2003, Plaintiffs, via facsimile, informed Defendants that, pursuant to Cavanah's June 2, 2003 "Value of Lost Commissions of Agents (per John Cavanah)" report (June 2, 2003 Report), Cavanah was going to testify to a damage calculation that differed from the one he had testified to at his deposition. Defendants moved to exclude the June 2, 2003 Report and Cavanah's testimony. The circuit court orally denied Defendants' motion, and Cavanah testified to his calculations.

██ Defendants argue that the circuit court abused its discretion by allowing Cavanah to testify regarding his June 2, 2003 Report, which had not been presented to Defendants until well after trial had commenced. Defendants contend the circuit court should have excluded Cavanah's report and testimony "because their late creation and disclosure constituted a serious discovery violation" and because the report "flatly contradicted Cavanah's pretrial deposition testimony." [11]

Specifically, Defendants argue that in his June 2, 2003 Report, Cavanah calculated the value of Plaintiffs' alleged lost commissions by applying a multiplier of 1.5 to *AIA's gross* (10%) commissions at the Hilo office from July 1, 2001 to June 30, 2002, whereas the calculations Cavanah had used in his deposition were based on *Plaintiffs' net* (5%) commissions and Cavanah, at his deposition, had specifically disavowed applying the amount of AIA's gross commissions. Defendants assert that Cavanah testified at trial that AIA's gross commissions for the time in question totaled $429,403—a number he specifically disavowed in his deposition. Defendants further argue that these parts of Cavanah's trial testimony contravened the circuit court's May 21, 2003 ruling that Cavanah could only testify as to what he had stated in his deposition.

At his deposition on April 7, 2003, Cavanah testified it was his opinion that "[i]n general practice, the sale or transfer of business from one to another carries the value of plus or minus one and one-half to two times the annual commission generated by that book." Cavanah stated that the annual commission referred to the full agency commission and the one and one-half to two multiplier was "a number that's been used for many years." Regarding a five-page AIA spreadsheet (Bates stamp A3578) marked as Exhibit 16 to his deposition (AIA Spreadsheet), Cavanah testified:

Q [Defendants] All right. Now, you've highlighted on the first page, 3835—on the first page, you've highlighted a couple of

---

11. In 2003, Hawai'i Rules of Civil Procedure Rule 26 provided in relevant part:

**RULE 26. GENERAL PROVISIONS GOVERNING DISCOVERY.**

....

**(e) Supplementation of responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

figures there, and that is a year-to-date total for Fiscal Year 1999, or I'm sorry—Calendar Year 1999 of—

A [Cavanah]—That's fiscal.

Q I'm sorry. And that's the total income of—what does it show?

A 1,022,851.

Q And then, on the next page, 3579, you've noted—

A It's 984,513.

Q That's for the year-to-date for 2000?

A Yes. And then, it's a 1,081,192.

Q For—

A —Year ending June 2001.

Q Right. And then—2002—

A It is 429,403.

Q Right.

A The same year ending.

Q And that's for the year ending in 2002?

A True.

Q And you've circled that, as well. Now that shows a drop from over a million?

A Almost 600,000.

Q A $600,000 drop in the total income for AIA.

How does that help you measure the damages allegedly suffered by the plaintiffs?

A Well, I'm looking at what is left in AIA.

Q Right.

A Which was their book of business to begin with.

Q How do you know that that's not new business that's been generated, at least in part during that time frame?

A During this year?

Q Yes.

A I can't swear to that.

Q Okay.

A I have no way of knowing.

* * *

Q All right. Nonetheless, when you look at—think about the 1.5 figure, you are looking at the amount of gross revenue of AIA over the course of the last three or four years, correct?

A Yes.

Q But at the same time, you have no way of telling how much of that revenue that AIA has at the present time, or at some time in 2002, relates to new business or business that has been AOR'd [Agent of Record] back to AIA at all, do you?

A No.

During his May 16, 2003 deposition, Cavanah stated the following with regard to his calculations:

Q [Defendants] ... Let's go back to the Exhibit A, and this is Exhibit A to Exhibit 20 of your deposition[12] [Exhibit 20].

---

12. Exhibits 20 to 24 were Supplemental Responses provided by each Plaintiff to Defendants' Second Request for Answers to Interrogatories. Exhibit A was attached to each of the five responses and provided in part:

**TIME FRAMES**
1. PRE TERMINATION
2. TERMINATION (Assume 7/1/01) ----- JUNE 30, 2002
3. JULY 1, 2002 ----- DECEMBER 31, 2002
4. JANUARY 1, 2003 -----

1. **PRE TERMINATION**
 $X
2. **TERMINATION—JUNE 30, 2002**
 $429,403 \times .60 = 257,642$
 $4,157,177 \times 1.0\% + 41,572$
 Total = 299,214
3. **JULY 1, 2002—DECEMBER 31, 2002**
 $168,750 \times .50 = 84,375$
 $1,607,758 \times 1.0\% = 16,078$
 Total = 100,453
4. **DECEMBER 31, 2002—FUTURE**
 $143,490 + 168,750 = 312,240 \times 2$ (per Cavanah) = 624,480

A [Cavanah] Yes.

Q Right. And I would like you to look at the calculation that was done under "Termination—June 30, 2002," do you see that?

A Yes.

Q Did you advise plaintiffs that this is the way that they should make a calculation for damages with respect to the time period of termination to June 30, 2002?

A No.

Q Can you explain for me the methodology that was used here.

A I can't.

Q Have you ever seen any methodology of this nature being used to calculate either valuation of the book of business or damages in a context such as this one?

A No.

Q I believe that in your prior testimony, you had been asked whether the method of determining damages would be to identify each of the lost accounts, and add up the commissions, and multiply by a total of one and-a-half [sic]. Remember that?

A Yes.

Q Okay, and I believe your answer was that that was the only way to do it; is that correct?

A That's what I've stated all along.

Q And to the best of your knowledge, is that how the calculation is done here in Item 2 [of Exhibit 20]?

A I do not follow their calculations.

I don't understand.

Q Why don't I give you a couple of moments, and read what is set forth in Paragraph 2 on the second page?

A Oh, okay.

Q Do you follow what was described on this second paragraph on page 2?

A I follow the reasoning.

Q And did you advise plaintiffs to use this methodology for making that calculation?

A No.

Q Do you know whether or not $429,403 is the gross commissions collected by the Hilo office for the period July 1, 2001 through June 30, 2002?

A Is that one of the numbers from that spread sheet we saw from my earlier testimony? That 429 rings a bell.

Q Let me show you what has previously been marked as Exhibit 16 to your deposition [the AIA Spreadsheet], and specifically to the—the last page, and the circled number, 429,403.

A Yeah, the same one.

Q Now, with respect to the number 429,403, that has been described as the gross commission collected by the Hilo office. Do you know whether the plaintiffs received any part of that commission?

A I have no idea.

Q And, if the plaintiffs did in fact receive a portion of that commission, would you believe that that's an appropriate number to use as a basis for multiplying?

A I really have no opinion on that.

Q Do you know whether any of it was new business written by the Hilo office?

A No.

Q And if there was new business written by the Hilo office that helped make up the 429,403, would you believe that that would be appropriate to give consideration for the plaintiffs?

A I would think not.

. . . .

Q So let us take a look at the [AIA Spreadsheet] that you were previously shown, and the $429,000. Do you see that?

A Yes.

299,214
100,453
624,480
_____
**1,024,147**

Not including pre-judgment interest, attorneys' fees and costs, punitive damages, "X".

Q Do you see the numbers that are below that?

A Yes.

Q And can you read what that refers to?

A It says, Personnel Sales. Agency Billed Commission Expense. Direct Billed Commission Expense.

Q And do you know whether those reflect payments to the agents?

A I would have no way of knowing.

In the June 2, 2003 Report, Cavanah calculated the value of Plaintiffs' lost commissions utilizing the $429,403 figure (which represented AIA's gross annual commissions). Cavanah's letter, which accompanied the June 2, 2003 Report, stated in part:

I have reviewed the trial testimony of Wayne Wehr for May 28, 2003 (A.M.), and Exhibit 317 [the AIA Spreadsheet] which you provided. I have also reviewed the supplemental report of Defendants' expert witness, Lewis Freitas, and the attached spreadsheet dated 5/25/03.

Based on my review of the above, the value of the agents' lost commissions should be as shown on the attachment.

Plaintiffs argue that Cavanah waited until June 2, 2003 to state his conclusion as to the total gross annual commissions because Defendants' expert witness, Wehr, did not disclose this fact until he testified on May 28, 2003.

On June 6, 2003, Defendants filed their Motion to Exclude Damages Report by John Cavanah Dated June 2, 2003, arguing that Cavanah's damages report represented "yet another lost commissions damages methodology or calculation that is seriously belated and inconsistent with other calculations and methodologies advanced by Plaintiffs to date."

At the hearing on the motion, the circuit court found

that there's no dispute as to the methodology being provided regarding the expert's opinion. The dispute is basically the methodology obtained to obtain the total lost commission.

The Court's reviewed the deposition. Certainly there has been questioning of the 429,403, but that number was asked at the deposition, and the Court finds that there's sufficient notice to the defendants, that it goes to the weight of the opinion rather than preclusion of the expert opinion. So the motion to exclude is denied.

At trial, Cavanah testified to the following:

Q. [Plaintiffs] Mr. Cavanah, with respect to your opinions on the value of the plaintiff agents' book of business, do you have an opinion as to the value?

A. [Cavanah] Yes, I do.

Q. And what is your opinion?

A. I came up with a number $644,104.5 [sic].

Q. Now, that's for all five agents together?

A. Gross.

Q. And can you tell us the basis for your opinion?

A. I used the factor of 1.5 and that was multiplied by the trending report of June 30th of '02, that had a gross commission of $429,403.

Q. And did you base your opinion on anything else?

A. Yes, I did. In reading testimony, I see Mr. Wehr agreed to the fact that that was the commission generated by the five plaintiffs. And, furthermore, there's Exhibit 317 [the AIA Spreadsheet] that shows that.

Q. All right. Now, you mentioned earlier during the qualification discussion, the rule of thumb. Can you elaborate on what you meant by the rule of thumb?

A. I mentioned the fact that the rule of thumb of 1.5 times gross commission was something that we used 40 to 50 years ago[.]

Q. All right. And the rule of thumb was—what was the multiplier you used?

A. One and a half times the gross commission.

In this case, Cavanah disclosed during his depositions the formula he would use to calculate AIA's gross commissions: the full, annual agency commission generated by the

book of business multiplied by 1.5 to 2. Cavanah also indicated that Exhibit 16 showed a year-to-date amount of $429,403, which represented AIA's gross commissions collected by the Hilo office for the fiscal year ending June 30, 2002; however, he had no way of knowing whether the $429,403 figure included new business.

Defendants claim that Cavanah "categorically disavowed" the use of AIA's gross commissions, as opposed to agents' individual commissions, in his formula. However, Cavanah merely testified at his deposition that he had not advised Plaintiffs to use the specific calculation method reflected in Exhibit 20. Thus, Defendants' interpretation of Cavanah's comment "I do not follow their calculations" is unreasonable. In context, Cavanah clearly was not categorically disavowing the method:

Q [Defendants] And to the best of your knowledge, is that how the calculation is done here in Item 2?

A [Cavanah] I do not follow their calculations.

I don't understand.

Q Why don't I give you a couple of moments, and read what is set forth in Paragraph 2 on the second page.

A Oh, okay.

Q Do you follow what was described on this second paragraph on page 2?

A I follow the reasoning.

Cavanah never testified in his deposition that he would not advise Plaintiffs to use the $429,403 figure represented in the calculations. Defendants should have been aware, from Cavanah's deposition testimony, that the $429,403 figure existed and reflected a potential calculation of the amount of AIA's gross commissions earned during the period

in question. Defendants cross-examined Cavanah extensively on the $429,403 figure, and Cavanah answered pointed questions regarding the reliability of his methodology.[13]

Defendants contend the circuit court clearly erred by finding that there was "no dispute as to the methodology" used in calculating damages and that Defendants had sufficient notice of Cavanah's new damages theory. These contentions lack merit. As discussed, Defendants were unreasonable to view Cavanah's "I do not follow their calculations" statement as a categorical disavowal, given the context in which that statement was made. Defendants had every reason to be aware of that figure, particularly given Wehr's trial testimony that the figure represented an accurate measure of AIA's Hilo office's gross commissions during the relevant time period. Experts testifying at trial may consider the testimony of other trial witnesses in formulating their own opinions. *Lai v. St. Peter*, 10 Haw.App. 298, 309, 869 P.2d 1352, 1359 (1994). Plaintiffs also disclosed their damages calculation formula in Porter's March 21, 2003 response to Defendants' Second Request for Answers to Interrogatories. In short, Defendants had adequate notice of the figure's existence and potential for use by Plaintiffs' testifying expert. Moreover, the circuit court did not find, as Defendants contend in their opening brief, that there was "no dispute as to the methodology regarding damages"; the circuit court found that "there's no dispute as to the methodology being provided regarding the expert's opinion." The difference is significant. The record reveals the circuit court did not clearly err by finding that Defendants had adequate opportunity to cross-examine Cavanah on the figures he used at trial, Defendants took advantage of that op-

---

13. At the hearing on the motion to exclude Cavanah's testimony and the June 2, 2003 Report, Defendants argued:

[Defendants]: So we believed, based on the Court's ruling, that [Cavanah] could not testify to anything he had not already testified to, that we would not be hearing those numbers out of him. And I believe that we would be severely prejudiced.

THE COURT: You would be prejudiced, you argue, because the number that he is now using was provided by your witness, Mr. Wehr.

[Defendants]: And he does not explain why he is entitled to come up with that at mid-trial.

\* \* \*

[Defendants]: But our problem is that when we proceeded to trial, we did so based on what Mr. Cavanah said was how you had to do it. He did not say "or I can take a number out of Servco's documents." It would have changed the approach that we took with the plaintiffs.

portunity, and Plaintiffs disclosed their methodology well in advance of trial.

### C. Attorneys' Fees on the Unjust Enrichment Claim

Defendants claim the circuit court erred by awarding Plaintiffs their attorneys' fees under the assumpsit statute because Plaintiffs' action sounded primarily in tort.

On September 22, 2003, Plaintiffs filed a "Motion for Attorneys' Fees and Costs Pursuant to HRS §§ 607–9, 607–14," in which Plaintiffs asked for attorneys' fees of $154,490, costs of $66,825.15, and interest on their unjust enrichment claim. Defendants filed their opposition memorandum on September 29, 2003.

In COL 13 of its FOF/COL Re Unjust Enrichment Claim, the circuit court concluded:

13. Pursuant to Haw.Rev.Stat. §§ 607–9 and 607–14, Plaintiffs are the prevailing parties on the Unjust Enrichment Claim and are thus entitled to their reasonable attorneys' fees and costs in amounts to be determined upon further application therefor by Plaintiffs. *See Schultz[Schulz] v. Honsador,* 67 Haw. 433, 435, 690 P.2d 279, 281 (1984) ("Assumpsit is a common law form of action which allows for recovery of damages for the non-performance of a contract, *either express or implied,* written or verbal, *as well as quasi contractual obligations.*") (emphasis added); *Hong v. Kong,* 5 Haw.App. 174, 183–184, 683 P.2d 833, 841 (1984) (in holding that action for rescission and restitution constituted action in nature of assumpsit within the meaning of Haw.Rev.Stat. § 607–14, the court stated that "assumpsit will lie upon a promise implied by law, which arises to prevent one man from being inequitably enriched at another's expense.")

(Emphasis in original.)

On October 14, 2003, the circuit court filed its "Order Granting in Part Plaintiffs' Motions for Attorneys' Fees and Costs Pursuant to HRS § 481A–4; and Pursuant to HRS §§ 607–9, 607–14" (Order Granting Fees), in which the court ordered

that Plaintiffs are awarded attorney's fees in the amount of $141,776.12 for the Unjust Enrichment Claim, pursuant to Haw.Rev. Stat. § 607–14. The Court finds that the Unjust Enrichment Claim is based on the nature of assumpsit under *Hong v. Kong,* 5 Haw.App. 174, 683 P.2d 833 (1984). The Court has computed twenty-five percent of $567,104.50, the total award for the Unjust Enrichment Claim, to reach the amount of $141,776.12.

Hawaii Revised Statutes § 607–14 (Supp. 2006) provides in relevant part:

§ 607–14 Attorneys' fees in actions in the nature of assumpsit, etc. In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed.

Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

In deciding whether a claim is "in the nature of assumpsit," the Hawai'i Supreme Court has stated:

Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi-contractual obligations. In deciding whether to award fees under HRS § 607–14, the court must determine the nature of the lawsuit where both assumpsit and non-assumpsit claims are asserted in an action. In ascertaining the nature of the proceeding on appeal, this court has looked to the essential character of the underlying action in the trial court. The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit.

*Blair*, 96 Hawai'i at 332, 31 P.3d at 189 (internal quotation marks, citations, brackets, and footnote omitted; block quote format changed). Additionally, if both assumpsit and non-assumpsit claims are asserted, the circuit court must base its award of claimed fees on an apportionment between assumpsit and non-assumpsit claims, to the extent practicable. *Id.*

This court has already determined that Plaintiffs' unjust enrichment claim was appropriately tried to the court (with the jury sitting in an advisory capacity), thereby essentially ruling that the action was an equity action within the realm of assumpsit. The

circuit court did not err by awarding attorneys' fees based on the unjust enrichment award.

Therefore, for the reasons set forth above, this court affirms the decision of the circuit court to allow Plaintiffs to recover their attorneys' fees on the unjust enrichment award.

### D. Attorneys' Fees on HRS Chapter 481A Claims

Defendants argue that the circuit court erred in awarding attorneys' fees in the amount of $295,074.67 on Plaintiffs' HRS Chapter 481A unfair trade practices claims because the fee award was grossly excessive, disproportionate, and not limited to fees incurred prosecuting that claim.[14] Defendants also claim that Plaintiffs ignored the lodestar method in calculating their fee award and that application of the lodestar method would have resulted in a far smaller award because the Chapter 481A claim was a small portion of the overall case. Plaintiffs respond by noting that under *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 444–45, 32 P.3d 52, 88–89 (2001), a prevailing party may recover all its legal fees even if it does not prevail on all claims, so long as the claims involve a common core of facts or are based on related legal theories and much of counsel's time is devoted generally to the overall litigation.

In Count IV of their Complaint, Plaintiffs alleged that AIA, Hu, Wehr, Schnitzer and Clark violated HRS § 481A–3 (1993)[15] by

---

**14.** The amount awarded was half of $445,000, the total fee requested by Plaintiffs.

**15.** HRS § 481A–3 (1993) provides in relevant part:

§ 481A–3 **Deceptive trade practices.** (a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

. . . .

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

. . . .

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . . .

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

(b) In order to prevail in an action under this chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

(c) This section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State.

soliciting Plaintiffs' clients after AIA terminated Plaintiffs.

Hawaii Revised Statutes § 481A–4(b) (1993) provides:

### § 481A–4 Remedies.

. . . .

(b) Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if (1) the party complaining of a deceptive trade practice has brought an action which the party knew to be groundless, or (2) the party charged with a deceptive trade practice has wilfully engaged in the trade practice knowing it to be deceptive.

On August 6, 2003, the circuit court filed its "Findings of Fact and Conclusions of Law as to Plaintiffs' HRS Chapter 481A Claim" (FOF/COL Re Chapter 481A Claim). In its COL 18, the circuit court ordered that "[a]s the prevailing parties, Plaintiffs shall ... recover their costs and reasonable attorneys' fees as to their Chapter 481A claim,. in amounts to be determined upon further application therefor by Plaintiffs."

On September 22, 2003, Plaintiffs filed their "Motion for Attorneys' Fees and Costs Pursuant to HRS § 481A–4," in which Plaintiffs stated that they had incurred attorneys' fees of $600,000 and costs of $70,000 through the end of August 2003. Plaintiffs also stated that

> [t]he portions of the attorneys' fees and litigation costs incurred solely due to the HRS 481A claim are impossible to allocate in that the discovery, pleadings, and trial presentation related to that claim were aimed as much at the 481A claim as Plaintiffs' other causes of action with regard to the baseless terminations.

> Notwithstanding the impossibility of allocation, Plaintiffs request pursuant to this Motion $445,000.00 in attorneys' fees and costs of $70,000.00. The basis upon which Plaintiffs make this request is that they should not be penalized in this case, where the Court has found them to be the prevailing parties over Defendants.

In its October 14, 2003 Order Granting Fees, the circuit court ordered:

IT IS FURTHER ORDERED that attorneys' fees are denied for Plaintiffs' Tortious Interference Claim. Under *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Haw. [sic] 243, 990 P.2d 713 (1999), the Tortious Interference Claim is not in the nature of assumpsit, and thus HRS § 607–14 does not apply.

IT IS FURTHER ORDERED that Plaintiffs are awarded attorneys' fees in the amount of $295,074.67 pursuant to Haw.Rev.Stat. § 481A–4. In making awards of attorneys' fees in cases where fees are awardable as to certain claims but not others, the Court must allocate the fees between the claims if at all practicable. The Court is allocating fifty percent of $590,149.35, the overall fees requested, to the § 481A–4 Claim to reach the amount of $295.074.67.

■■■■ All judges must "specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground." *Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 113, 111 P.3d 1, 8 (2005). "The reasonableness of an expenditure of attorneys' fees is a matter within the discretion of the circuit court. Moreover, a request for attorneys' fees is generally far more complex than a request for costs, which may be easily proven by actual receipts for expenditures." *Finley v. Home Ins. Co.*, 90 Hawai'i 25, 39, 975 P.2d 1145, 1159 (1998).

There is no prescribed method of determining when claims are too closely related to segregate them, *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); however, several cases are instructive. *Schefke* concerned a statute under which fees were to be awarded only on those claims upon which the plaintiff prevailed and addressed the question of whether a plaintiff who prevailed on only part of his claims might recover attorney's fees for legal services on his unsuccessful claims. 96 Hawai'i at 444–45, 32 P.3d at 88–89. The Hawai'i Supreme Court explained:

> In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court addressed the issue of "whether a partially prevailing

plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Id.* at 426, 103 S.Ct. 1933. According to *Hensley,* the trial court must determine (1) whether or not unsuccessful claims are related to successful claims, *see id.* at 434, 103 S.Ct. 1933, and (2) whether or not "the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id.* Unsuccessful claims are deemed unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories." *Id.* Thus, "even where the claims are brought against the same defendants, counsel's work on one claim may be unrelated to his or her work on another claim," *id.* at 434–35, 103 S.Ct. 1933, "work on such an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," *id.* at 435, 103 S.Ct. 1933 (internal quotation marks and citations omitted), and "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. 1933.

On the other hand, if "the plaintiff's claims for relief involve a common core of facts or are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," *id.* at 435, 103 S.Ct. 1933, "such a lawsuit cannot be viewed as a series of discrete claims." *Id.* In that situation, "a plaintiff who has won substantial relief should not have his or her attorney's fee reduced simply because the trial court did not adopt each contention raised." *Id.* at 440, 103 S.Ct. 1933.

As to the required level of success, "where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee" because "litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435, 103 S.Ct. 1933. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably ex-

pended on the litigation as a whole times a reasonable hourly rate may be an excessive amount even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."

96 Hawai'i at 444–45, 32 P.3d at 88 (brackets, ellipses, and footnote omitted).

The Hawai'i Supreme Court remanded and directed the trial court to engage in a *Hensley* analysis to determine whether it was reasonable to award attorney's fees for the entire time spent on the case, noting that time spent on unsuccessful claims unrelated to the plaintiff's successful claims could not be part of any award of " 'reasonable attorney's fees' under Hawai'i fee-shifting statutes." *Schefke,* 96 Hawai'i at 445, 32 P.3d at 89. The court directed that the trial court "consider whether Plaintiff's successful and unsuccessful claims 'involved a common core of facts or were based on related legal theories,' *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933[.]" *Schefke,* 96 Hawai'i at 445, 32 P.3d at 89 (brackets omitted).

■■■■ Within this framework, we look to cases from other jurisdictions to provide helpful illustrations of the rules we adhere to. For example, where claims are based on a common set of facts, but based on separate theories and argued separately, fee segregation is appropriate. *Tutor–Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1064 (9th Cir.2006) (constitutional and statutory claims argued separately throughout district court proceedings). In that case, the record was simple and the material facts undisputed. *Id.* In contrast stands *Ethridge v. Hwang,* 105 Wash.App. 447, 20 P.3d 958 (2001). Ethridge sued Hwang under a landlord-tenant statute, a consumer protection statute, and in tort, alleging that Hwang refused to permit Ethridge to sell her home. *Id.* at 451–52, 20 P.3d at 961–62. Ethridge prevailed on all three claims, and a trial court awarded her attorney's fees. *Id.* at 460–61, 20 P.3d at 966. Although the lease and the consumer protection statute authorized attorney's fees, Hwang argued that the trial court erred in awarding Ethridge fees for her tortious interference claim. *Id.* On appeal, the appellate court held that

[b]ecause nearly every fact in this case related in some way to all three claims, segregation of the fee request was not necessary and the trial court did not abuse its discretion in awarding fees as it did.

Moreover, Ethridge's attorney spent no time, other than drafting the complaint, solely on the tortious interference claim prior to Hwang's request for a trial de novo. . . . Whether there was an amount of time spent on the tortious interference claim prior to arbitration was a question of fact which the trial court resolved in favor of Ethridge. Because any time spent on the tortious interference claim prior to arbitration was not spent *solely* on the tortious interference claim, segregation is not necessary.

*Id.* at 461, 20 P.3d at 966–67. The court further observed that "the court is not required to artificially segregate time in a case . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." *Id.* at 461, 20 P.3d at 966.

In *Akins v. Enterprise Rent–A–Car Co.*, 79 Cal.App.4th 1127, 94 Cal.Rptr.2d 448 (2000), Akins brought an action against Enterprise Rent–A–Car (Enterprise) and an Enterprise employee, alleging a host of statutory and common-law tort claims. *Id.* at 1130, 94 Cal.Rptr.2d at 450. The matter went to arbitration on the tort claims, but not the statutory claim, and Akins was awarded more than $25,000; however, Enterprise rejected the award and sought trial. *Id.* Trial commenced, and Enterprise eventually obtained a partial nonsuit on Akins's statutory claim. *Id.* at 1131, 94 Cal.Rptr.2d at 450. A jury found for Akins on several tort claims and held Enterprise liable for $69,470 in damages. *Id.* at 1131, 94 Cal.Rptr.2d at 451. The verdict did not allocate the damages awarded between the statutory and tort claims. *Id.* The trial court ordered Enterprise to pay Akins $85,490 in attorneys' fees, the amount Akins sought pursuant to her statutory claim. *Id.* at 1131–32, 94 Cal. Rptr.2d at 451.

On appeal, Enterprise argued that the trial court abused its discretion by failing to require Akins to apportion the hours spent on her successful and unsuccessful statutory claims because Akins was only entitled to attorney's fees on her successful statutory claims. *Id.* at 1132, 94 Cal.Rptr.2d at 451–52. The appellate court held:

When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required.

. . . To paraphrase the wisdom expressed by another appellate court, litigation may involve a series of attacks on an opponent's case. The final ground of resolution may become clear only after a series of unsuccessful attacks. Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim.

*Id.* at 1133, 94 Cal.Rptr.2d at 452 (citations omitted).

In the instant case, Plaintiffs' claims were based on a common core of facts, occurred roughly within the same two-month span of time, and were based on similar legal theories. Inasmuch as that is true, it appears that counsels' time was devoted largely to the litigation as a whole and not divisible into discrete slivers neatly matching each claim advanced. The lower court record is voluminous and complex. "Where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee because litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Schefke*, 96 Hawai'i at 444, 32 P.3d at 88 (internal quotation marks, citation, and brackets omitted). We also believe the trial judge was in the best

position to assess the reasonableness of counsels' actions. *Nelson v. Univ. of Hawai'i*, 99 Hawai'i 262, 269, 54 P.3d 433, 440 (2002). Under these circumstances, we cannot conclude the circuit court abused its discretion in awarding 50% of the attorneys' fees requested by Plaintiffs.

### IV.

The Final Judgment filed on January 29, 2004 and the First Amended Final Judgment filed on May 4, 2004 in the Circuit Court of the Third Circuit are affirmed.